# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-0355

ANGEL VAZQUEZ-FLORES, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Remand from the U.S. Court of Appeals for the Federal Circuit

(Decided October 22, 2010)

*Kathy A. Lieberman*, of Washington, D.C., for the appellant.

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Debra L. Bernal*, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and GREENE and HAGEL, *Judges*.[1]

KASOLD, *Chief Judge*, filed the opinion of the Court. HAGEL, *Judge*, filed an opinion concurring in the result.

KASOLD, *Chief Judge*: On January 30, 2008, the Court, in a panel opinion, set aside and remanded a February 1, 2005, decision of the Board of Veterans' Appeals (Board) that denied a disability rating greater than 30% for nephrolithiasis,[2] and denied disability compensation for neuropsychiatric disorder because it was not service connected on a direct basis or as secondary to a service-connected renal disability. *See Vazquez-Flores v. Shinseki*, 22 Vet.App. 37 (2008) (*Vazquez-Flores I*). Subsequently, in *Vazquez-Flores v. Shinseki*, 580 F.3d 1270 (Fed. Cir. 2009) (*Vazquez-Flores II*), the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) vacated and remanded that part of the Court's January 30, 2008, decision that set aside and remanded Mr.

---

[1] Judge Greene served as the Court's Chief Judge at the time of the Court's January 20, 2008 decision, and upon expiration of his term as Chief Judge, Judge Kasold took the oath of office of Chief Judge on August 6, 2010.

[2] Nephrolithiasis is the formation of renal calculi, or kidney stones. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 276, 1260 (31st ed. 2007).

Vazquez-Flores's increased-rating claim for nephrolithiasis.[3]  Although this matter was returned for single-judge consideration and was subsequently stayed on May 19, 2010, for the resolution of *Simmons v. Shinseki*, U.S. Vet. App. No. 03-1731 (set aside and remanded for further proceedings September 28, 2010) (possibly addressing the issue of prejudice), upon further review, the matter is referred again for panel consideration and the stay is hereby lifted.  For the reasons set forth below, that part of the Board's February 1, 2005, decision denying an increased schedular rating for nephrolithiasis will be affirmed.  That part of the Board's decision that denied an extraschedular rating and failed to address entitlement to a total disability rating based upon individual unemployability (TDIU) will be set aside and the matters remanded for further adjudication.

## I. BACKGROUND

### A.  Facts

Mr. Vazquez-Flores served on active duty in the U.S. Army from July 1963 to July 1965 and from January 1966 to January 1969.  Record (R.) at 26.  He was granted service connection for nephrolithiasis, and in April 1976 his disability rating was increased to 30%.  R. at 242, 246.  Additional evidentiary development followed, during which Mr. Vazquez-Flores submitted an April 1979 private mental evaluation report from Dr. Raul Correa Grau that reflects a diagnosis of moderately severe depressive reaction and April 1979 hospitalization records that reflect a diagnosis of schizophrenia.  R. at 250-52, 274-75.  After additional adjudication wherein a VA regional office (RO) denied his claim for service connection for a psychiatric disorder, Mr. Vazquez-Flores submitted a June 1982 private psychiatric evaluation report that opined that he had undifferentiated schizophrenia and that his condition "becomes more prominent when ph[y]sical symptomatology flares up." R. at 280.  He appealed the RO's decision to the Board, and in September 1984 the Board, inter alia, denied service connection for an acquired psychiatric disorder on the basis that it was not incurred in or aggravated by service.  R. at 296-305.

In August 1994, Mr. Vazquez-Flores sought to reopen his previously denied claim. R. at 358. He also claimed that his "service-connected kidney condition ha[d] increased in severity." *Id.*

___

[3] An increased-rating claim is the same as a claim for increased benefits and the terms are used interchangeably throughout this opinion, as they are throughout the caselaw addressing VA disability compensation.

During the development of these claims, Mr. Vazquez-Flores submitted a July 1994 VA medical report that his nephrolithiasis caused depression. R. at 362. He also submitted a September 1995 letter from his private psychiatrist, Dr. Jose Juarbe, who opined that Mr. Vazquez-Flores's "schizophrenic condition started back in 1964," and that he considered the schizophrenia to be service connected. R. at 390. In February 1998, Dr. Juarbe testified before the RO that Mr. Vazquez-Flores had major depression that "without any doubt is related to his physical condition." R. at 455. In August 2000, the RO issued to Mr. Vazquez-Flores a Supplemental Statement of the Case (SSOC) containing the diagnostic code (DC) criteria for nephrolithiasis, hydronephrosis, and renal dysfunction. R. at 505-14. A November 2002 VA mental disorders examination report reflected that Mr. Vazquez-Flores had a diagnosis of recurrent, moderate major depressive disorder that was not related to service and was not precipitated or aggravated by Mr. Vazquez-Flores's service-connected renal disability. The VA examiner stated that Mr. Vazquez-Flores "does not report any subjective complaint, any type of relationship between his renal symptoms and his psychiatric symptomatology," and that his clinical history demonstrated no type of relationship between these conditions. R. at 585.

## B. *Vazquez-Flores I*

### 1. Neuropsychiatric Disorder

With regard to the denial of disability compensation for Mr. Vazquez-Flores's neuropsychiatric disorder, the Court in *Vazquez-Flores I* found that the Board relied heavily on the November 2002 VA examiner's statements that Mr. Vazquez-Flores "does not report any subjective complaint, any type of relationship between his renal symptoms and his psychiatric symptomatology," and that his clinical history demonstrated no type of relationship between these conditions (R. at 585). The Court concluded that this statement may be read broadly to say that there is no medical evidence and no complaints of record from Mr. Vazquez-Flores regarding a relationship between his nephrolithiasis and his psychological condition. Moreover, the Court noted that at least three reports in the record before the Board appeared to contradict this statement. *Vazquez-Flores I*, 22 Vet.App. at 49-50 (noting R. at 280 (June 1982 psychiatric evaluation report stating that Mr. Vazquez-Flores's psychiatric condition "becomes more prominent when ph[y]sical symptomatology flares up"), 362 (July 1994 VA medical record reflecting that Mr. Vazquez-Flores's

3

complaints of depression were the result of his nephrolithiasis), 455 (February 1998 testimony of Dr. Juarbe that Mr. Vazquez-Flores's major depression "without any doubt is related to his physical condition")). The Court further noted that it also is possible that the November 2002 examination report could be read more narrowly to mean that, during that particular examination, Mr. Vazquez-Flores provided no history or complaint to the examiner.

The Court identified two multifaceted errors in the Board's statement regarding its reliance on the November 2002 examination report. First, the Board erred when it failed to recognize and address the fact that the November 2002 examination report fairly could be read broadly or narrowly, with differing meanings, and when it failed to either return the examination report to the examiner for clarification or explain why such action was not necessary. *Id.*; *see also Daves v. Nicholson*, 21 Vet.App. 46, 51 (2007) (noting that when a medical examination report was susceptible to multiple fair but inconsistent meanings, the Board erred in failing to seek clarification); 38 C.F.R. § 4.2 (2007). Second, to the extent the Board relied on the broad interpretation of the November 2002 examination report, it erred in not explaining the discrepancy in the apparently contradictory information in the record and not explaining why it gave greater weight to the November 2002 examination report than it gave to the contradictory information. *Vazquez-Flores I*, 22 Vet.App. at 50.

### 2. Nephrolithiasis

Concerning Mr. Vazquez-Flores's increased-compensation claim for nephrolithiasis, we held in *Vazquez-Flores I* that the preadjudicatory notice required by 38 U.S.C. § 5103(a) to be provided by the Secretary to claimants seeking increased compensation includes, at a minimum, the following: notification that to substantiate a claim the claimant should provide or ask the Secretary to obtain medical or lay evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on the claimant's employment and daily life. *Id.* at 43. Further, we held that if the DC under which the claimant is rated contains criteria necessary for entitlement to a higher disability rating that would not be satisfied by the claimant demonstrating a noticeable worsening or increase in severity of the disability and the effect that worsening has on the claimant's employment and daily life (such as a specific measurement or test result), the Secretary must provide at least general notice of that requirement to the claimant. *Id.*

4

*Vazquez-Flores I* also held that the claimant must be notified that, should an increase in disability be found, a disability rating will be determined by applying relevant DCs, which typically provide for a range in severity of 0% to as much as 100% (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration, and their impact upon employment and daily life. *Id*. The notice must also provide examples of the types of medical and lay evidence that the claimant may submit (or ask the Secretary to obtain) that are relevant to establishing entitlement to increased compensation–e.g., competent lay statements describing symptoms, medical and hospitalization records, medical statements, employer statements, job application rejections, and any other evidence showing an increase in the disability or exceptional circumstances relating to the disability. *Id.* at 44.

Applying the facts, we held that the Board erred when it relied on notice letters dated April 2001 and December 2003 and a February 2004 SSOC to find adequate preadjudicatory notice. Specifically, the Court observed that neither of the notice letters provided Mr. Vazquez-Flores the necessary notice regarding substantiating his claim for a disability rating higher than the 30% rating currently assigned. The Court also noted that (1) the April 2001 letter focused only on what is necessary to substantiate a claim for service-connected benefits in the first instance, and provided no information on how to substantiate an increased rating for an already service-connected disability, (2) although the December 2003 letter advised Mr. Vazquez-Flores to submit evidence that shows that his nephrolithiasis has "gotten worse" (R. at 928), it failed to explain that the evidence must demonstrate the effect of that worsening on his occupational and daily life and failed to provide, at least in general terms, the criteria beyond the effect of the worsening of the disability upon the occupational and daily life that is necessary for the award of the higher disability rating for his condition, and (3) the Board relied on the February 2004 SSOC to find compliance with § 3.159, which, at the time, required the Secretary to, inter alia, request the claimant to provide any evidence in his possession that pertains to the claim. *Id*. at 47; *see also* 38 C.F.R. § 3.159(b)(1) (2005).[4] In addition, the Court found that the totality of information provided in these documents was confusing

---

[4]The Secretary removed this requirement from 38 C.F.R. § 3.159(b), effective May 30, 2008. *See* 73 Fed. Reg. 23,353, 23,354 (2008).

in that it provided differing versions of what was required to show entitlement to a higher disability rating. *Id*. at 48; *Kent v. Nicholson*, 20 Vet.App. 1, 10 (2006) (noting that incomplete and confusing information renders section 5103(a) notice inadequate).

Having found that Mr. Vazquez-Flores had not been provided adequate preadjudicatory notice, the Court then addressed whether such an error was prejudicial. At that time, the Federal Circuit decision in *Sanders v. Nicholson*, 487 F.3d 881 (Fed. Cir. 2007), *rev'd*, 129 S. Ct. 1696 (2009), held that all preadjudicatory notice errors were deemed presumptively prejudicial, thus placing the burden on the Secretary to demonstrate a lack of prejudice. *Id*. at 890-91. In the context of having just explained the scope of the preadjudicatory notice required in an increased-rating claim, the Court rejected the Secretary's contention that Mr. Vazquez-Flores had actual knowledge of what was necessary to substantiate an increased rating. And, pursuant to the Court's duty to examine the record for prejudice, the Court further found that throughout the extensive administrative appeal Mr. Vazquez-Flores had not been provided satisfactory notice to substantiate his claim. *Vazquez-Flores I*, 22 Vet.App. at 49. Accordingly, the Court reversed the Board's finding that the Secretary had provided section 5103(a)-compliant notice. *Id*. at 48. The Secretary appealed that decision to the Federal Circuit.

## C. *Vazquez-Flores II*

In *Vazquez-Flores II*, the Federal Circuit addressed two issues on appeal, to wit: (1) Whether section 5103(a) requires the Secretary to provide a veteran seeking an increased rating with the relevant rating criteria under every DC potentially applicable to the veteran's present disability; and (2) whether the Secretary must consider the effect of the worsening of a service-connected disability upon the veteran's daily life. 580 F.3d at 1275. The Federal Circuit held that reference to DCs is not required because generic notice in response to a particular type of claim – a claim for an increased rating – is all that is required under *Wilson v. Mansfeld*, 506 F.3d 1055, 1062 (Fed. Cir. 2007) (holding that section 5103(a) requires only generic notice in that it need not identify evidence specific to the individual claimant's case) and *Paralyzed Veterans of America v. Secretary of Veterans Affairs*, 345 F.3d 1334, 1347-48 (Fed. Cir. 2003) (holding, inter alia, that § 3.159(b)(1) does not require notice that identifies specific evidence needed to substantiate a particular veteran's claim). *Id*. at 1277. The Federal Circuit also held that the Secretary's failure to provide notice to

6

increased-rating applicants that they should submit evidence relating to "the effect that worsening has on the claimant's . . . daily life" does not constitute a breach of the Secretary's duty to provide adequate notice. *Id*. at 1280. In summary, the Federal Circuit stated:

> Notice described in 38 U.S.C. § 5103(a) need not be veteran specific under *Wilson* and *Paralyzed Veterans*. Similarly, while a veteran's "daily life" evidence might in some cases lead to evidence of impairment in earning capacity, the statutory scheme does not require such evidence for proper claim adjudication. Thus, insofar as the notice described by the Veterans Court in *Vazquez-Flores* requires the VA to notify a veteran of alternative diagnostic codes or potential "daily life" evidence, we vacate the judgments.

*Id.* at 1280-81.

### D. *Sanders*

Subsequent to *Vazquez-Flores I*, but before the issuance of *Vazquez-Flores II*, the Supreme Court reversed *Sanders*. Succinctly stated, the Supreme Court concluded that generally notice errors are not presumptively prejudicial and that the burden of demonstrating error does not shift on appeal from the losing party to the prevailing party. 129 S. Ct. at 1705. However, the Supreme Court also noted the expertise of this Court, an appellate court dealing with the adjudication of veterans claims, and acknowledged the possibility that we might find that certain types of notice errors generally have the effect of producing prejudice as a factual matter. *Id.* at 1707 ("[C]ourts may sometimes make empirically based generalizations about what kinds of errors are likely, as a factual matter, to prove harmful. . . . It is the Veterans Court . . . that sees sufficient case-specific raw material in veterans' cases to enable it to make empirically based, nonbinding generalizations about 'natural effects.'" (citations omitted)). We now address the contentions of the parties on remand.

## II. DISCUSSION

### A. Arguments of the Parties

Mr. Vazquez-Flores argues that (1) his claim for disability compensation for a neuropsychiatric disability was not decided by *Vazquez-Flores II* and should be remanded, (2) the finding in *Vazquez-Flores I* that notice provided to him was inadequate is a factual finding that the

7

Federal Circuit did not have jurisdiction to address, (3) *Vazquez-Flores II* does not specifically reject the Court's conclusion in *Vazquez-Flores I* that section 5103(a) obligates the Secretary to notify the claimant to submit evidence demonstrating the effect that the worsening of his disorder has on his employment such that notice provided to him still is inadequate based on the remaining rationale of *Vazquez-Flores I*, (4) the Court's determination in *Vazquez-Flores I* that notice provided to him was confusing is undisturbed by *Vazquez-Flores II*, and (5) it is the Secretary who has the burden to show that Mr. Vazquez-Flores was not prejudiced by notice errors.

The Secretary agrees with Mr. Vazquez-Flores's first contention that the Court's remand of that part of Mr. Vazquez-Flores's claim for benefits for neuropsychiatric disability was not on appeal to the Federal Circuit. Regarding the claim for benefits for nephrolithiasis, the Secretary argues that (1) the law of the case doctrine and the fact that the Federal Circuit vacated *Vazquez-Flores I* operate to void the Court's holdings pertaining to notice required by section 5103(a) such that the holdings now must be reconsidered in their entirety, (2) the December 2003 notice letter provided to Mr. Vazquez-Flores satisfied the "generic notice" requirement described by the Federal Circuit in *Vazquez-Flores II* because it advised the appellant of the information or evidence necessary to substantiate his increased-rating claim, i.e., that his condition has worsened, (3) Mr. Vazquez-Flores's claim was readjudicated in a February 2004 SSOC that cured any timing errors in accordance with *Mayfield v. Nicholson*, 499 F.3d 1317, 1323 (Fed. Cir. 2007) (*Mayfield IV*),[5] (4) the Court's holding that the notice provided to Mr. Vazquez-Flores was incomplete and confusing cannot stand because under *Mayfield II*, 444 F.3d at 1333-34, the December 2003 notice letter corrected any confusion created by the April 2001 notice letter, and (5) Mr. Vazquez-Flores failed to show that he was prejudiced by any purported notice error.

---

[5] The *Mayfield* decisions are referred to throughout this opinion as *Mayfield I-IV*. In *Mayfield I*, this Court affirmed the Board's decision finding, inter alia, that a March 2001 letter satisfied the Secretary's duty to notify under 38 U.S.C. § 5103(a) as amended by the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, § 3(a), 114 Stat. 2096 ("VCAA"). 19 Vet.App. 103 (2005). In *Mayfield II*, the Federal Circuit reversed and remanded this Court's decision because the Board had not relied upon the March 2001 letter to find adequate notice, and this Court should not have done so in the first instance. 444 F.3d 1328, 1329 (Fed. Cir. 2006). After a limited remand to the Board in which the Board found that initially inadequate preadjudicatory notice had been cured by subsequent adequate notice and another decision on the claim rendered in a January 2002 SSOC, this Court affirmed the Board's decision in *Mayfield III*. 20 Vet.App. 537 (2006). The Federal Circuit affirmed in *Mayfield IV*.

### B. Neuropsychiatric Disability

The parties agree that the Secretary did not appeal to the Federal Circuit that part of *Vazquez-Flores I* that set aside that part of the Board's decision denying disability compensation for neuropsychiatric disability. *See Vazquez-Flores I*, 22 Vet.App. at 49-51. *Vazquez-Flores II* specifically stated that the questions addressed by its decision pertained to the Court's reading of section 5103(a) in the context of increased-rating claims. Accordingly, that portion of *Vazquez-Flores I* that set aside that part of the Board's February 1, 2005, decision denying disability compensation for neuropsychiatric disability was never appealed and the matter remained remanded, leaving on appeal only that part of the Board's decision addressing Mr. Vazquez-Flores's claim for increased benefits for nephrolithiasis. It is to that portion that we now turn.

### C. Increased Rating for Nephrolithiasis

#### 1. Initial Matters

##### a. Federal Circuit Jurisdiction

Mr. Vazquez-Flores's argument that the Federal Circuit was without jurisdiction to decide whether inadequate notice was provided to him because it is a factual issue is inapposite. Although he is correct that the Federal Circuit lacks jurisdiction to review factual findings, *see* 38 U.S.C. § 7292(d)(2), it did not do so. Rather, it determined that this Court's interpretation of section 5103(a) as it applied to an increased-rating claim was overbroad. Moreover, even if the Federal Circuit erred, arguments to that effect are fruitless here. We are bound by the decisions of the Federal Circuit. 38 U.S.C. § 7292(e)(1).

##### b. Law of the Case

Similarly unavailing is the Secretary's assertion that the law of the case doctrine dictates that the Court must fully reconsider its findings regarding its interpretation of section 5103(a). The law of the case "merely requires a trial court to follow the rulings of an appellate court" and "does *not* constrain the trial court with respect to issues not actually considered by the appellate court." *Exxon Corp. v. United States*, 931 F.3d 874, 877 (Fed. Cir. 1991) (emphasis in original). To the extent the doctrine applies to this appellate court, the Federal Circuit's decision in *Vazquez-Flores II* only considered whether section 5103(a) required the Secretary to notify the veteran of alternative DCs or "daily life" evidence. *See Vazquez-Flores II*, 580 F.3d at 1281 ("*[I]nsofar* as the notice described

9

by the Veterans Court in *Vazquez-Flores* requires the VA to notify a veteran of alternative [DCs] or potential 'daily life' evidence, we vacate the judgments." (emphasis added)). Accordingly, whether the decision in *Vazquez-Flores I* regarding preadjudicatory notice is "reconsidered" now in total or in part, the rationale provided by *Vazquez-Flores I* may be used to resolve the arguments on appeal to the extent that the rationale does not conflict with *Vazquez-Flores II* or intervening law, or otherwise remains persuasive. *See Exxon Corp.*, *supra*.

### c. Section 3.159(b) Request To Submit all Pertinent Evidence

Although the Board committed error when it found that a February 2004 SSOC satisfied the requirement in 38 C.F.R. § 3.159(b) that a claimant be requested to "provide any evidence in the claimant's possession that pertains to the claim," *Mayfield II*, 444 F.3d at 1333 ("That duty of affirmative notification is not satisfied by various post-decisional communications from which a claimant might have been able to infer what evidence the VA found lacking in the claimant's presentation."), Mr. Vazquez-Flores neither contends error in this regard nor indicates that he was prejudiced by any error. *See Mayfield I*, 19 Vet.App. at 123 (noting that the appellant failed to carry her burden of prejudice when she provided responses to the Secretary's requests for evidence and that there was no indication that she had pertinent evidence in her possession).

Moreover, the record reveals that Mr. Vazquez-Flores was aware that he should have submitted evidence in his possession and that he did not possess such evidence. R. at 930 (Mr. Vazquez-Flores responds by letter to the December 2003 notice letter that "all my [outpatient] records are at VAH - San Juan, PR" (emphasis in original)), 966 (Mr. Vazquez-Flores responds to the February 2004 SSOC that he continues outpatient treatment "at VAH- SanJuan" and that he is severely disabled and getting worse); *Mayfield I*, 19 Vet.App. at 121-22 (noting that the claimant's actual knowledge of an evidentiary requirement is sufficient to demonstrate that a notice defect omitting such information was not prejudicial and that the failure to provide timely notice of the fourth element of notice per § 3.159(b)(1) does not have the natural effect of producing prejudice).

Accordingly, our discussion of whether there was adequate preadjudicatory notice will focus on the notice letters provided to Mr. Vazquez-Flores and relied on by the Board to find adequate section 5103(a) notice, and not any notice provided in the February 2004 SSOC.

### 2. Required Notice for Increased-Compensation Claims

Mr. Vazquez-Flores correctly notes that *Vazquez-Flores II* does not reject this Court's holding that the Secretary is required by section 5103(a) to notify a claimant seeking increased disability benefits to submit evidence demonstrating the effect that the worsening of his disability has on his employment. Indeed, *Vazquez-Flores II* emphasizes the importance of employment evidence. *Vazquez-Flores II* instructs that 38 U.S.C. § 1155, which provides the authority to the Secretary to create disability rating schedules, focuses entirely upon impact in earnings capacity. *Vazquez-Flores II*, 580 F.3d at 1279. *Vazquez-Flores II* notes also that "disability" is defined by 38 C.F.R. § 4.1 to mean "impairment in earning capacity resulting from such diseases and injuries and their residual conditions." *Id*. at 1280. Moreover, holding that section 5103(a) requires the Secretary to provide such notice to claimants would not constitute the type of veteran-specific notice that is prohibited by *Wilson* because all notice to increased-compensation claimants would be the same. *Id*. at 1277 (citing *Wilson* and noting that providing notice as to a veteran's applicable DCs is veteran specific, and not required, because notices to increased-compensation claimants would potentially differ); *see also Wilson,* 506 F.3d at 1062 ("[N]otice may be generic in the sense that it need not identify evidence specific to the individual claimant's case (though it necessarily must be tailored to the specific nature of the veteran's claim).").

Therefore, based on the rationale provided in *Vazquez-Flores I* and *II*, section 5103(a) requires the Secretary, for increased-rating claims, to notify the claimant that to substantiate such a claim the claimant should provide or ask the Secretary to obtain medical or lay evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on the claimant's employment. *See Vazquez-Flores II*, 580 F.3d at 1279-80; *Vazquez-Flores I*, 22 Vet.App. at 43.

### 3. Adequacy of Notice

#### a. Impact on Employment

As noted in *Vazquez-Flores I*, *supra,* none of the documents relied upon by the Board to find that the Secretary provided adequate notice informed Mr. Vazquez-Flores that he should submit evidence demonstrating the effect that worsening of his disability has on his employment. Because this is part of the notice that should be provided in all increased-rating claims, the Secretary fails in his argument that the December 2003 notice letter and subsequent adjudication of the claim cured

previous notice error and satisfied section 5103(a) because it advised the appellant to submit evidence that his condition has "worsened." *See Mayfield IV*, 499 F.3d at 1323 (noting that timing problems are cured by new notification that complies with VCAA and subsequent readjudication).

### b. Confusing Notice

The Secretary correctly notes that initial notice that is inadequate can be cured by subsequent adequate notice followed by another adjudication of the claim. *See Mayfield II*, 444 F.3d at 1333-34. However, even assuming arguendo that in this instance the December 2003 letter provided to Mrs. Mayfield was complete, the Secretary's argument that it could not be confusing because such a holding would conflict with the holding in *Mayfield II* evinces a misunderstanding of what the law is and how it is applied. The Secretary fails to recognize that any subsequent notice, although clear on its face in isolation, nevertheless might be presented in a manner that is confusing based upon the surrounding circumstances. *See Kent*, 20 Vet.App. at 12 (noting that the combination of the changed definition for "new evidence" in § 3.156(a) and statements that erroneously informed the claimant that he had submitted new evidence, together, rendered the notice confusing); *see also Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002) (considering all relevant communications from the Secretary when determining whether adequate notice had been provided).

For example, if a claimant is seeking increased benefits for a disability already service connected and he is provided notice how to substantiate an initial claim for benefits, simply providing additional notice how to substantiate a claim for increased benefits could very well confuse the claimant as to which notice is indeed correct. Such confusion might be avoided by noting, e.g., that the second notice is a corrective notice. Additionally, the potential confusion generated by differing notices might be clarified or negated by actions taken in the subsequent processing of the claim, or otherwise ultimately shown by the record not to have confused the claimant. In sum, simply because subsequent notice, good on its face, is provided to the claimant does not mean that the notice was adequate. Whether notice is confusing is a fact-specific determination based on the totality of the circumstances. *See Kent* and *Quartuccio*, both *supra*; *see also Gordon v. Nicholson*, 21 Vet.App. 270, 281 (2007) (section 5103(a) notice error is a factual determination reviewed under the "clearly erroneous" standard).

Mr. Vazquez-Flores is correct that the holding in *Vazquez-Flores I* rested on alternative

determinations that the notice provided to him was both incomplete and confusing. And, as he points out, the Federal Circuit in *Vazquez-Flores II* did not reject the Court's determination that the notice provided to him was confusing, *Vazquez-Flores I*, 22 Vet.App. at 48 (citing *Kent*, 20 Vet.App. at 12 (incomplete and confusing information renders section 5103(a) notice inadequate)). However, this determination in *Vazquez-Flores I* does not necessarily hold after *Vazquez-Flores II* because our observations in *Vazquez-Flores I* were based on the totality of the notice provided to Mr. Vazquez-Flores and rendered in the context of the Court's understanding of the scope of notice required by section 5103(a), which has been narrowed significantly by the Federal Circuit in *Vazquez-Flores II*.

Regardless, in this instance, for purposes of establishing notice error, we need not decide whether the totality of the preadjudicatory notice provided to Mr. Vazquez-Flores was confusing because, as already noted, it was incomplete, and therefore inadequate. Accordingly, the Board's finding to the contrary is clearly erroneous. *Gordon*, *supra*; *Padgett v. Nicholson*, 19 Vet.App. 133, 147-48 (2005) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." (quoting *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990))). Having found error, however, whether notice was confusing remains relevant in the context of assessing the fairness of the adjudication. This is discussed below.

### 4. Prejudice

#### a. *Mayfield I*

Once error is found, the Court must determine whether the error is prejudicial. 38 U.S.C. § 7261(b)(2) (the Court must "take due account of the rule of prejudicial error"); *Sanders,* 129 S. Ct. at 1706 (the rule of prejudicial error requires Federal courts to review cases for errors of law without regard to errors that do not affect the parties' substantial rights). Not surprisingly, the parties disagree as to who has the burden of demonstrating prejudice. As noted above, the Supreme Court issued *Sanders* after *Vazquez-Flores I* was issued and we now re-examine the issue of who has the burden of demonstrating prejudice in light of the Supreme Court's decision.

Mr. Vazquez-Flores argues that *Sanders* instilled new life into *Mayfield I*, and that the Secretary therefore has the burden of demonstrating prejudice, while the Secretary counterargues that

13

the appellant bears the burden. We now resolve that debate. *Mayfield I* did not address the prejudicial effect of inadequate preadjudicatory notice for an increased-rating claim. Rather, *Mayfield I* addressed preadjudicatory notice in the context of an initial claim for benefits, which unlike an increased-rating claim, requires (1) a current disability, (2) in-service incurrence of an injury or disease or aggravation thereof, and (3) a nexus between the current disability and the in-service disease or injury. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995) *aff'd per curiam*, 78 F.3d 604 (Fed. Cir.1996).

In *Mayfield I*, the preadjudicatory notice provided to the claimant never advised her that evidence showing a nexus between service and the current disability was needed to substantiate the claim. The Court noted the general rule that appellants have the burden of demonstrating prejudice on appeal,[6] but further noted that the failure to provide any notice on a key element needed to substantiate a claim in the first instance had a natural, adverse effect on the ability of the claimant to meaningfully participate in the processing of his claim and the essential fairness of the adjudication. Under such circumstances, the Court held that the Secretary had the burden of demonstrating there was no prejudice to the appellant, or in other words, that the error did not affect the essential fairness of the adjudication.[7]

We recognize and fully adhere to the Supreme Court's caution in *Sanders* that the shifting of the burden to demonstrate prejudice is not absolute and is based on experience learned over time of the types of errors that are likely to prove harmful. Although *Mayfield I* has been read as establishing an absolute shifting of the burden in all cases where notice how to substantiate a claim is inadequate, closer examination reveals that the burden shifting only occurs when notice is wholly defective as to a key element needed to substantiate a claim for benefits in the first instance. *Mayfield I*, 19 Vet.App. at 120 ("We agree with the Secretary that our application of the rule of

---

[6] *See Mayfield I*, 19 Vet.App. at 119 ("[O]nce an appellant has demonstrated an error below he or she generally bears a responsibility to initiate consideration of the issue of prejudice, that is, the appellant carries the burden of going forward with a plausible showing of how the essential fairness of the adjudication was affected by that error.").

[7] *See Mayfield I*, 19 Vet.App. at 122; *see also id.* at 116 (defining a "prejudicial error" as one that "affects a substantial right so as to injure an interest that the statutory or regulatory provision involved was designed to protect such that the error affects 'the essential fairness of the [adjudication]'" (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 396 (Fed. Cir.1996))); *Parker v. Brown*, 9 Vet.App. 476, 481 (1996).

prejudicial error should not permit automatic remands that would make the Court an 'impregnable citadel [ ] of technicality'" (citing *United States v. Hasting*, 461 U.S. 499, 508-09 (1983))); *see also Cohens v. Virginia*, 6 Wheat. 264 (1821) (noting that language in a particular case is meant to be viewed in the context of the case and should not be extended blindly in subsequent cases).

When notice how to substantiate a claim is wholly defective as to a key element needed to substantiate the claim, such that the absence of evidence on the key element will result in denial of the claim, the natural effect is that the claimant is deprived of a meaningful opportunity to participate in the processing of his claim. It is under these circumstances that *Mayfield I* holds that the Secretary has the burden of demonstrating the notice error was not prejudicial. *Mayfield I*, 19 Vet.App. at 122; *see also Vazquez-Flores I*, 22 Vet.App. at 46 (noting that the extensive post-initial decision administrative processing provided below, including the identification of the issues in dispute provided in the SOC and the requirement for the Secretary to provide medical examinations if needed to properly decide the claim, might demonstrate that a preadjudicatory notice was not prejudicial). Moreover, even when the burden shifts to the Secretary to demonstrate no prejudice, this is not the absolute defining factor for assessing prejudice as the Court always has the duty to review the record for prejudice. *Sanders*, 129 S. Ct. at 1705 (noting that reviewing courts "read the entire record" when determining whether there is prejudicial error); *Newhouse v. Nicholson*, 497 F.3d 1298, 1301 (Fed. Cir. 2007) (noting that the Court is required to review the administrative record for prejudicial error); *Mlechick v. Mansfield*, 503 F.3d 1340, 1346 (Fed. Cir. 2007) (noting that the Court must review the record to take due account of the rule of prejudicial error); *Conway v. Principi*, 353 F.3d 1369, 1375 (Fed. Cir. 2004) ("[T]he Veteran's Court must 'take due account of the rule of prejudicial error' in all cases addressing the notice requirements in section 5103(a) . . . .").[8] As noted above, *Mayfield I* did not address notice and prejudice in the context of an increased-rating claim; we now turn to that issue.

_____

[8]Our concurring colleague reiterates his disagreement stated in his concurring statement from *Vazquez-Flores I*, 22 Vet.App. at 51-57, that the entire record should not be reviewed, as a whole, to determine whether section 5103(a) notice errors are prejudicial. His disagreement relied heavily on the rigid framework established by the Federal Circuit's decision in *Sanders v. Nicholson*, which was reversed, vacated, and the matters remanded. 487 F.3d 881 (Fed. Cir. 2007), *rev'd*, 129 S. Ct. 1696, 1705 (2009) ("The Federal Circuit's presumptions exhibit the very characteristics that Congress sought to discourage . . . . They would require the reviewing court to find the notice error prejudicial even if that court, *having read the entire record*, conscientiously concludes the contrary." (emphasis added)).

15

b.  Increased-Rating Claim

In a claim for increased benefits, the claimant already is service connected for a disability. A claim for increased benefits can be substantiated with evidence of a worsening of the disability that, depending upon the nature of the corresponding disease or injury in the DC, is demonstrated by more objective evidence such as a specific measurement or test result, or, more general evidence such as the impact upon employment or daily life.[9]  Significantly, however, all three types of evidence are not always necessary to be awarded a higher disability rating.  *Compare* 38 C.F.R. § 4.71a, DC 5215 (2010) (evaluating ankylosis of the wrist at 10% if dorsiflexion is less than 15 degrees), *and* § 4.100, DC 6847 (2010) (evaluating sleep apnea syndrome at 50% if the veteran requires the use of breathing assistance such as a continuous airway pressure machine), *with* 38 C.F.R. § 4.130, DC 9201 (2010) (evaluating schizophrenia based upon, inter alia, the degree of occupational impairment, including "difficulty in adapting to stressful circumstances (including work or a worklike setting)"), *and with* 38 C.F.R. § 4.88b, DC 6354 (evaluating Chronic Fatigue Syndrome based upon the degree to which fatigue "restricts routine daily activities").

Thus, while the failure to provide any notice how to substantiate a claim for increased benefits would be akin to the lack of notice on the key element of nexus addressed in *Mayfield I*, providing inadequate or incomplete notice how to substantiate a claim for increased benefits – e.g., notice to provide evidence how a disability has worsened, without notice to provide evidence of its impact on employment – is not.  This is because complying with such notice (i.e., by providing evidence of the worsening of the disability), unlike the situation in *Mayfield I*, does not necessarily mean the increased-rating claim will be denied, and the notice error does not, therefore, have a natural adverse effect on the claimant's ability to meaningfully participate in the processing of his claim or the essential fairness of the adjudication.  Accordingly, except when section 5103(a) notice

---

[9]  Although preadjudicatory notice to provide evidence of the impact of a worsening disability on life or a particular test result  or measurement is not required per *Vazquez-Flores II*, 580 F.3d at 1280-81, evidence of the impact a worsening of disability has on life or a particular test result are factors in some of the DCs in the schedule for rating disabilities, *see*, *e.g.*, 38 C.F.R. § 4.130, DC 9440 (2010) (evaluating mental disorders based upon the severity of "occupational and social impairment," including, inter alia, " family relations," interference with routine activities," and "inability to perform activities of *daily living* (including maintenance of minimal personal hygiene)," § 4.88b, DC 6354 (2010) (evaluating Chronic Fatigue Syndrome based upon the degree to which fatigue "restrict[s] routine *daily activities*" (emphasis added)),  and §4.79, DC 6066 (2010) (providing a 50% disability rating if the corrected vision in one eye is found to be measured at 20/70).

16

how to substantiate an increased-rating claim simply is not provided at all, a shift of the appellant's burden to the Secretary to show that the appellant was not prejudiced is unwarranted.

c. Application of Law and Fact

In this instance, Mr. Vazquez-Flores was provided a December 2003 notice letter that informed him that to substantiate his claim for increased benefits he needed to provide evidence that his disability had worsened. Although this is not complete notice, it is not the total absence of notice as to a key element generally needed to substantiate the claim that we saw in *Mayfield I. See* 19 Vet.App. at 122. Moreover, the schedular rating criteria for nephrolithiasis does not explicitly include the impact nephrolithiasis has on employment. *See* 38 C.F.R. § 4.115b, DC 7508 (2010) (rating nephrolithiasis, inter alia, at 30% if recurrent stone formation requires either diet therapy, drug therapy, or an invasive or non-invasive procedure more than two times per year). Accordingly, the inadequacy of this notice does not have a natural, adverse affect on the ability of Mr. Vazquez-Flores to meaningfully participate in the processing of his claim and the essential fairness of the adjudication. Thus, the burden of demonstrating prejudice falls on Mr. Vazquez-Flores.

Although Mr. Vazquez-Flores does not specifically argue prejudice (indeed, he contends he has no burden of demonstrating prejudice), he does contend that the notice he received was confusing. If the notice letters of April 2001 and December 2003 are considered in a vacuum, they certainly can be confusing as there is no indication which notice should be followed to substantiate his claim for increased benefits. However, prejudice is not assessed in a vacuum; rather it is based on the facts and circumstances presented in the entire record. *Sanders, Newhouse*, *Mlechick*, and *Conway*, all *supra*.

The record on appeal reflects that since Mr. Vazquez-Flores submitted his claim for an increased rating in 1994, he has submitted evidence reflecting the impact of his disability on his employment, and evidence on this issue has been developed by the Secretary. For example, (1) an August 1997 VA medical report states that Mr. Vazquez-Flores could not work because of back pain (R. at 425); (2) a February 1998 hearing transcript notes the testimony of Mr. Vazquez-Flores's private psychiatrist that Mr. Vazquez-Flores had no industrial capacity due to his physical, psychiatric and social conditions(R. at 17, 458); (3) a November 2002 VA examination report states that Mr. Vazquez-Flores stopped working in April 1978 and had been receiving Social Security

17

benefits since 1978 (R. at 583-85); and (4) Mr. Vazquez-Flores's Social Security Association records, obtained by the Board in 2002 note, inter alia, poor ability to comprehend and follow instructions as well as poor ability to perform simple, complex, and repetitive tasks and that no degree of improvement can reasonably be anticipated in Mr. Vazquez-Flores's condition (R. at 588-89). Moreover, the Board is not only presumed to have reviewed this information, *Newhouse*, 497 F.3d at 1302, its statement of reasons or bases supporting the decision reflects its awareness that Mr. Vazquez-Flores's nephrolithiasis, along with his other physical, psychiatric, and social conditions, has impacted his employment to the degree that he has not been able to work since 1978. R. at 9, 17. Accordingly, without any indication from Mr. Vazquez-Flores that he has been prejudiced by the Secretary's error, and without finding any prejudice demonstrated by the record on appeal, remand is not warranted with regard to his assigned schedular rating. *See Marciniak v. Brown*, 10 Vet.App. 198, 201 (1997) (noting that remand is unnecessary "[i]n the absence of demonstrated prejudice").

### D. Extraschedular and Total Disability Ratings

Although we find no prejudice arising from the notice error, we note that the Board also determined that referral of Mr. Vazquez-Flores's claim for extraschedular consideration in accordance with § 3.321(b) was not warranted because the evidence did not show that his nephrolithiasis, by itself, caused frequent hospitalization or marked interference with employment. R. at 17. Logically, because Mr. Vazquez-Flores's claim for benefits for a neuropsychiatric disability has been remanded on appeal and there is evidence showing that both his physical and mental conditions have caused unemployment, the Board will have to again address possible referral of his claim for consideration of entitlement to an extraschedular rating on remand. *See Tyrues v. Shinseki*, 23 Vet.App. 166, 178-79 (2009) (remand generally appropriate when matter on appeal is "inextricably intertwined" with matters being adjudicated below); *Thun v. Peake*, 22 Vet.App. 111 (2008) (holding that referral for extraschedular consideration is a three-step inquiry and is not warranted if the rating schedule adequately contemplates the effect of a claimant's level of disability and symptomatology).

Moreover, we note that evidence in the record reasonably raises whether Mr. Vazquez-Flores is entitled to TDIU. *See* R. at 583-85 (a November 2002 VA examination report states that Mr.

Vazquez-Flores stopped working in April 1978 and had been receiving Social Security benefits since 1978), 458 (a February 1998 hearing transcript notes the testimony of Mr. Vazquez-Flores's private psychiatrist that Mr. Vazquez-Flores had no industrial capacity due to his physical, psychiatric and social conditions); *see also* 38 C.F.R. § 4.16 (2010) (criteria for a total rating based on individual unemployability). Accordingly, the Board erred in not addressing TDIU and it must do so on remand. *See Roberson v. Principi,* 251 F.3d 1378 (Fed. Cir. 2001) (noting that the Secretary must consider TDIU when a veteran makes a claim for the highest rating possible and submits evidence of a medical disability and of unemployment); *Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (noting that the Board required to consider all issues raised either by the claimant or by evidence of record); *see also Barringer v. Peake,* 22 Vet.App. 242, 244 (2008) (Court has jurisdiction to review whether Board erred in failing to address a reasonably raised claim); *Patton v. West*, 12 Vet.App. 272, 283 (1999) (noting that the Court's statutory directive under 38 U.S.C. § 7261 to "decide all relevant questions of law" allows it to raise issues sua sponte, particularly where "substantial interests of justice dictate that the Court require the Secretary to adhere to his own regulatory provisions").

### III. CONCLUSION

Upon consideration of the foregoing, that part of the Board's February 1, 2005, decision that denied disability compensation for neuropsychiatric disorder because it was not service connected on a direct basis or as secondary to a service-connected renal disability remains REMANDED for further adjudication consistent with this opinion and the Court's January 30, 2008, opinion; that part of the Board's decision denying entitlement to an increased schedular rating is AFFIRMED; however, the denial of an extraschedular rating and implicit denial of a total disability rating based upon individual unemployability is SET ASIDE and the matters REMANDED for further adjudication consistent with this decision.

HAGEL, *Judge*, concurring in the result: Although I agree with the majority's opinion in this appeal, I feel compelled to reiterate my disagreement with the majority's conclusions in *Vazquez-Flores I* that an appellant's postadjudicatory participation in the VA appellate process can alone

render a section 5103(a) notice error nonprejudicial. Because the Federal Circuit did not address this issue in *Vazquez-Flores II,* 580 F.3d 1270 (Fed. Cir. 2009), the Court's majority opinion as to these issues stands undisturbed. Therefore, for the reasons stated in my concurrence in *Vazquez-Flores I*, *see* 22 Vet.App. 37, 51-57 (2008), I continue to respectfully disagree with the majority's apparent minimization of the duty to notify.

.