﻿Citation Nr: 19142240
Decision Date: 05/31/19 Archive Date: 05/31/19

DOCKET NO. 15-17 619
DATE: May 31, 2019

ORDER

Entitlement to an initial disability rating of 60 percent, but no higher, for chronic eosinophilic pneumonia, asthma is granted. 

Entitlement to an initial disability rating in excess of 70 percent for adjustment disorder with mixed anxiety and depressed mood also claimed as major depressive disorder is denied. 

FINDINGS OF FACT

1. The Veteran’s chronic eosinophilic pneumonia, asthma manifested in symptoms including intermittent courses of systemic oral corticosteroids and unfulfilled monthly visits to a physician for required care of exacerbations. 

2. The Veteran’s adjustment disorder with mixed anxiety and depressed mood also claimed as major depressive disorder manifested in symptoms productive of occupational or social impairment with deficiencies in most areas due to symptoms such as suicidal ideation, near continuous depression, difficulty in adapting to stressful circumstances, but not total occupational and social impairment. 

CONCLUSIONS OF LAW

1. The criteria for an initial disability rating of 60 percent, but no higher, for chronic eosinophilic pneumonia, asthma have been satisfied. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.10, 4.21, 4.97, DC 6602. 

2. The criteria for entitlement to a disability rating in excess of 70 percent for adjustment disorder with mixed anxiety and depressed mood also claimed as major depressive disorder have not been satisfied. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.10, 4.21, 4.130, DC 9440. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran retired after serving on active duty from July 1994 to July 2014. 

1. Entitlement to an initial disability rating of 60 percent, but no higher, for chronic eosinophilic pneumonia, asthma

The Veteran contends that the 30 percent rating is not reflective of the severity of his chronic eosinophilic pneumonia, asthma. On the Veteran’s VA Form 9, he requested a rating of 60 percent and the Board finds that, based on the evidence, a 60 percent disability rating is warranted. 

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

If there is a question as to which evaluation to apply to the Veteran’s disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3. 

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings are sufficiently characteristic to identify the disease and the resulting disability and coordination of rating with impairment of function. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of his disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). 

In considering the severity of a disability, it is essential to trace the medical history of the veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, see 38 C.F.R. § 4.2, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55 (1994). 

“The relevant temporal focus for adjudicating an increased-rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim.” Hart v. Mansfield, 21 Vet. App. 505, 509 (2007). The relevant time period for consideration in a claim for an increased initial disability rating is the period beginning on the date that the claim for service connection was filed. Moore v. Nicholson, 21 Vet. App. 211, 216-17 (2007).

The Board must also assess the competence and credibility of lay statements and testimony. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). In increased rating claims, a Veteran’s lay statements alone, absent a negative credibility determination, may constitute competent evidence of worsening, at least with respect to observable symptoms. See Vazquez-Flores v. Shinseki, 24 Vet. App. 94, 102 (2010), rev’d on other grounds by Vazquez-Flores v. Shinseki, 580 F.3d 1270, 1277 (Fed. Cir. 2009). 

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 38 C.F.R. § 4.25. However, pyramiding, or evaluating the same manifestation of a disability under different diagnostic codes, is to be avoided. See 38 C.F.R. § 4.14 (2017). Thus, separate ratings under different diagnostic codes are only permitted if, for example, those separate ratings are assigned based on manifestations of the Veteran’s disability that are separate and apart from manifestations for which the Veteran has already been rated. Esteban v. Brown, 6 Vet. App. 259, 261 (1994). 

The Veteran separated from active service on July 31, 2014 and his claim for entitlement to service connection for asthma was made within one year of separation. The RO granted service connection for chronic eosinophilic pneumonia, asthma at a 30 percent disability rating from August 1, 2014 under Diagnostic Code 6602 and the Veteran perfected a timely appeal of that initial rating decision. 

The Veteran’s asthma has been rated under the provisions of 38 C.F.R. § 4.97, Diagnostic Code (DC) 6602. Under DC 6602, a 10 percent rating is assigned for FEV-1 of 71- to 80-percent predicted, or; FEV-1/FVC of 71 to 80 percent, or; intermittent inhalational or oral bronchodilator therapy. 

A 30 percent rating is assigned for FEV-1 of 56- to 70-percent predicted, or; FEV-1/FVC of 56 to 70 percent, or; daily inhalational or oral bronchodilator therapy, or; inhalational anti-inflammatory medication. 

A 60 percent rating is assigned for FEV-1 of 40- to 55-percent predicted, or; FEV-1/FVC of 40 to 55 percent, or; at least monthly visits to a physician for required care of exacerbations, or; intermittent (at least three per year) courses of systemic (oral or parenteral) corticosteroids. 

A 100 percent rating is assigned for FEV-1 less than 40-percent predicted, or; FEV-1/FVC less than 40 percent, or; more than one attack per week with episodes of respiratory failure, or; requires daily use of systemic (oral or parenteral) high dose corticosteroids or immuno-suppressive medications. 

When evaluating based on pulmonary function tests (PFTs), VA uses post-bronchodilator results in applying the evaluation criteria in the rating schedule unless the post-bronchodilator results are poorer than the pre-bronchodilator results. See 38 C.F.R. § 4.97(d)(5). When there is a disparity between the results of different PFTs so that the level of evaluation would differ depending on which test result is used, VA uses the test result that the examiner states most accurately reflects the level of disability. See 38 C.F.R. § 4.97(d)(6). 

When the Veteran initially considered separating from active service in 2008, the RO granted a 100 percent disability rating for the Veteran’s pulmonary disability based on measurements of FEV-1 of 21 percent and FEV-1/FVC of 46 percent. The decision stated that the disability rating was subject to reevaluation based on improvement in the future. The Veteran then decided to reenlist in the Navy and therefore, the VA compensation was ultimately not perfected at that time. The Veteran then retired in July 2014 and the current appeal followed. 

The Veteran underwent a VA examination in June 2014. The Veteran’s FEV-1 was recorded as 88 percent predicted value and FEV-1/FVC was 96 percent. The Veteran had required two oral corticosteroids treatments in the prior 12 months. The Veteran took inhaled daily anti-inflammatory medication but did not require daily inhaled bronchodilator. The examiner marked that the Veteran required less than monthly physician treatment for asthma. 

The Veteran states in a written statement dated September 2017 that he has multiple medical visits per year specific to respiratory issues, either in the emergency room or at the medical offices, but that doctors have instructed him to not visit on a monthly basis because he is receiving all available treatment for the condition. The Veteran’s medical records show multiple prescriptions for prednisone in the past, in addition to daily inhaled respiratory medications. There is a pattern in the Veteran’s medical records showing regular visits for respiratory problems, to include emergency room visits, e.g. August 2016, and that in December 2015, the physician noted “signs of respiratory failure” prompting another prednisone prescription. 

The Veteran submitted a DBQ from his regular pulmonary VA physician dated October 2018 that reported a pulmonary test dated October 2017 with an FEV-1 of 89 percent predicted and FEV-1/FVC of 70 percent. The doctor recorded that FEV-1/FVC is more reflective of the Veteran’s disability, at 70 percent, this measurement is on the border between the 10 percent and 30 percent disability rating for DC 6602. 

The Veteran’s medical treatment records document an improvement in the chronic eosinophilic pneumonia, asthma disability since the 2008 rating decision. The Veteran’s pulmonary test results are much higher than the reported 21 percent FEV-1 used in the 2008 rating decision. However, based on the Veteran’s statements and associated medical treatment records pertinent to the time period for this appeal, the Veteran’s chronic eosinophilic pneumonia, asthma disability more closely approximates the 60 percent disability level. 38 C.F.R. § 4.7. The Veteran has multiple visits per year to doctors or emergency rooms for his respiratory disability, as well as chronic daily inhaled medications, and regularly prescribed oral corticosteroids. The Veteran states he ideally would visit the doctor monthly but has been advised it would not improve his treatment. However, the Board finds that the Veteran does not meet the criteria for a 100 percent disability rating as the evidence does not show FEV-1 less than 40-percent predicted, or; FEV-1/FVC less than 40 percent, or; more than one attack per week with episodes of respiratory failure, or; requires daily use of systemic (oral or parenteral) high dose corticosteroids or immuno-suppressive medications. 

Accordingly, the Board finds that a disability rating of 60 percent, but no higher, is warranted for the Veteran’s chronic eosinophilic pneumonia, asthma, and to that extent, the appeal is granted. 

2. Entitlement to an initial disability rating more than 70 percent for adjustment disorder with mixed anxiety and depressed mood also claimed as major depressive disorder

The Veteran contends that the initial disability rating of 70 percent for adjustment disorder with mixed anxiety and depressed mood also claimed as major depressive disorder [herein adjustment disorder] does not reflect the severity of the disability. After a thorough review of the evidence, the Board finds that a 100 percent rating is not warranted. 

The Veteran separated from active service on July 31, 2014 and his claim for entitlement to service connection for adjustment disorder was made within one year of separation. The RO granted service connection for adjustment disorder at a 70 percent disability rating from August 1, 2014 under Diagnostic Code 9440 and the Veteran perfected a timely appeal of that initial rating decision. 

Mental disorders are evaluated under the general rating formula for mental disorders, a specific rating formula presented under 38 C.F.R. § 4.130. In addition, the fourth edition of the American Psychiatric Association’s Diagnostic and Statistical Manual for Mental Disorders (DSM-IV) provides guidance for the nomenclature employed within 38 C.F.R. § 4.130. 

However, effective August 4, 2014, VA amended the portion of its Schedule for Rating Disabilities dealing with mental disorders and its adjudication regulations that define the term “psychosis” to remove outdated references to the DSM-IV and replace them with references to the recently updated Diagnostic and Statistical Manual (Fifth Edition) (the DSM-5). See 79 Fed. Reg. 45,094 (August 4, 2014). VA adopted as final, without change, this interim final rule and clarified that the provisions of this interim final rule do not apply to claims that have been certified for appeal to the Board or are pending before the Board on or before August 4, 2014. See Schedule for Rating Disabilities - Mental Disorders and Definition of Psychosis for Certain VA Purposes, 80 Fed. Reg. 14,308 (March 19, 2015). In the present case, the RO first certified the Veteran’s appeal to the Board in September 2017, which is after August 4, 2014. Thus, the version of 38 C.F.R. § 4.125 conforming to the DSM-5 is applicable in the present case. In any event, the Board will still consider any private or VA examiner’s discussion of both the DSM-IV and DSM-5 in adjudicating the current Veteran’s depression claim, in order to provide the Veteran with every benefit of the doubt.

When evaluating a mental disorder, the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran’s capacity for adjustment during periods of remission must be considered. 38 C.F.R. § 4.126(a). In addition, the evaluation must be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner’s assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a). When evaluating the level of disability from a mental disorder, the extent of social impairment is considered, but the rating cannot be assigned solely on the basis of social impairment. 38 C.F.R. § 4.126(b). 

The General Rating Formula for Mental Disorders provides for a 10 percent rating for psychiatric disorders if there is occupational and social impairment due to mild or transient symptoms which decrease work efficiency and the ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication. 

A rating of 30 percent is warranted if there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent evaluation is warranted when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent evaluation is warranted when there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and the inability to establish and maintain effective relationships. Id.

A 100 percent evaluation is warranted if there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

A veteran need not exhibit “all, most, or even some” of the symptoms enumerated in the General Rating Formula for Mental Disorders to warrant the assignment of a higher rating. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Rather, the use of the phrase “such symptoms as,” followed by a list of examples, provides guidance as to the severity of symptomatology contemplated for each rating. Id. In particular, use of such terminology permits consideration of items listed as well as other symptoms and contemplates the effect of those symptoms on the claimant’s social and work situation. Mauerhan, 16 Vet. App. at 442.

The Federal Circuit has clarified that the General Rating Formula for Mental Disorders requires not only (1) sufficient symptoms of the kind listed in the percentage requirements, or others of similar severity, frequency, or duration, but also (2) that those symptoms cause the level of occupational and social impairment specified in the regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013). The Federal Circuit endorsed an approach whereby the Board would identify the symptoms associated with the service-connected mental health disability, determine whether they are of the kind enumerated in the regulation, and if so, assess whether they result in the level of occupational and social impairment specified by a particular rating. Id. The 70 percent disability rating regulation, in particular, contemplates initial assessment of the symptoms displayed by the veteran, and if they are of the kind enumerated in the regulation, an assessment of whether those symptoms result in occupational and social impairment with reduced reliability and productivity. Id. Reading §§ 4.126 and 4.130 together, it is evident that the “frequency, severity, and duration” of a veteran’s symptoms must play an important role in determining the disability level. Id. at 117. 

The Veteran underwent a VA psychiatric examination in June 2014 at the time of separation from active service. The Veteran reported suicidal ideation but no immediate plan to carry it out or to harm others. The Veteran reported that he had historically cut himself or burned himself with cigarettes. The examiner opined that the Veteran’s mental health did not prevent him from working, although historically in the Navy, his adjustment disorder resulted in irritability and becoming withdrawn which resulted in slightly diminished work quality. The examiner also opined that the Veteran did not meet the criteria for major depressive disorder. The examiner opined that the Veteran’s mental health symptoms approximated the 30 percent disability rating with occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. At the time, the Veteran was enrolled in anger management group and had experienced multiple episodes of depression. The Veteran’s symptoms included depressed mood, specific suicidal thoughts, attempts to self-harm, irritability, difficulty initiating sleep, hypersomnolence, unwanted weight gain, anxiety, difficulty concentrating and completing tasks. There was no inpatient stay due to mental health disorders. The Veteran had allegedly assaulted his second wife to whom he was no longer married. 

The Veteran’s treatment records are consistent with his lay statements and the reported symptoms from the 2014 VA psychiatric examination. In August 2016, the Veteran reported that he had always had thoughts of suicide but never carried it out. He reported depression and that he sometimes hears or sees things that are not there or hears people calling his name. The medical provider reported no suicidal or homicidal ideations or plans and no problems with sleep or appetite. The Veteran was on prescription medication for mental disorder. The Veteran’s speech was coherent and relevant with normal volume and tone. There were no delusions or hallucinations elicited at the time of evaluation. Insight and judgment were not impaired.

In the August 2018 Board hearing, the Veteran testified that he has been working since he separated from active service and that he currently works. He testified that his job involves a lot of customer contact that he finds difficult and that he was “written up” one time for his temper. The Veteran reported monthly flashbacks and that he hallucinates about every three to four months. The Veteran reported memory loss, that he has a hard time remembering things, but he has not missed work. The Veteran reported isolating behavior, he does not spend as much time with his family members as he should at home, he tends to stay alone. The Veteran reported weekly suicidal ideations. 

The Board finds that a 100 percent disability rating for the Veteran’s adjustment disorder is not supported by the evidence. A 100 percent evaluation is the next schedular rating for mental disorders. 38 C.F.R. § 4.130. The evidence does not support a gross impairment in thought or communication, grossly inappropriate behavior, persistent danger of hurting himself or others, intermittent inability to perform activities of daily living, disorientation to time or place, or memory loss for names of close relatives, own occupation, or own name. On the contrary, the Veteran is working and has reported not missing any work due to his service connected mental disorder. The Veteran testified competently at the Board hearing as to his occupation and other details about his daily life. The evidence of record does not support that the Veteran has impairment in hygiene or activities of daily living. The Veteran has reported hallucinations, visual and aural, but based on the evidence, these hallucinations are not persistent to the extent of causing total occupation and social impairment. The Veteran reported having hallucinations every three to four months at the Board hearing in 2018. The evidence of record supports that the symptoms of the Veteran’s adjustment disorder more closely approximate the 70 percent disability rating which is already assigned. 38 C.F.R. § 4.7. Accordingly, the appeal for an increased rating is denied. 

 

DAVID L. WIGHT

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD E. Miller

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.