Citation Nr: 1504667 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 12-08 225 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to a disability rating in excess of 20 percent for residuals of prostate cancer.

2. Entitlement to service connection for hypertension, to include as due herbicide exposure and/or secondary to service-connected disabilities.

3. Entitlement to an initial disability rating in excess of 30 percent for service-connected coronary artery disease with sick sinus syndrome and pacemaker implant with scar.

4. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

J. Davitian, Counsel


INTRODUCTION

The Veteran served on active duty from March 1954 to November 1983. 

These matters come to the Board of Veterans' Appeals (Board) on appeal from rating decisions dated in September 2010 and April 2011 by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia.

In an April 2013 decision and remand, the Board denied the issue of entitlement to an increased initial evaluation for heart disability. The Board remanded the issues of entitlement to service connection for hypertension, to include as due herbicide exposure and/or secondary to service-connected disabilities; entitlement to a disability rating in excess of 20 percent for service-connected residuals of prostate cancer; and entitlement to a total disability rating based on individual unemployability (TDIU).

The Veteran appealed the denial of an increased initial evaluation for heart disability to the United States Court of Appeals for Veterans Claims (Court). The parties submitted a Joint Motion for Partial Remand (Joint Motion). By order dated in January 2014, the Court granted the Joint Motion, and remanded the issue for compliance with its instructions. 

The Board remanded all of the issues on appeal in April 2014. The issue of entitlement to a disability rating in excess of 20 percent for service-connected residuals of prostate cancer is now before the Board for final appellate consideration.

The issues of service connection for hypertension; increased rating for service-connected coronary artery disease with sick sinus syndrome and pacemaker implant with scar; and TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

The competent medical evidence, and competent and credible lay evidence, does not show that the Veteran's residuals of prostate cancer result in leakage requiring the wearing of absorbent materials which must be changed 2 to 4 times per day; urinary frequency with a daytime voiding interval less than one hour, or awakening to void five or more times per night; or obstructed voiding with urinary retention requiring intermittent or continuous catheterization. 


CONCLUSION OF LAW

The criteria for an evaluation in excess of 20 percent for residuals of prostate cancer have not been met. 38 U.S.C.A. §§ 1155, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.10, 4.115a, 4.115b, Diagnostic Code 7528 (2014).

REASONS AND BASES FOR FINDING AND CONCLUSION

Notice and Assistance

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). Vazquez-Flores v. Shinseki, 24 Vet. App. 94 (2010). 

Notice was provided in a June 2013 letter. The claim was readjudicated in a September 2014 supplemental statement of the case. Accordingly, the duty to notify has been fulfilled. 

With regard to the duty to assist, the claim's file contains the Veteran's service treatment records, VA medical records, private medical records and the transcript of a March 2013 hearing before the undersigned Veterans Law Judge. 

VA examinations were conducted in December 2011 and July 2014. To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Although only the July 2014 VA examination report states that the examiner reviewed the Veteran's claims file, the evaluations' relevance to the current decision stems from their assessment of the current level of the disability. Overall, the examiners considered the Veteran's medical history, including his lay reports of his symptomatology; described the Veteran's disability in sufficient detail; and fully described the functional effects caused by the Veteran's disability. Stefl v. Nicholson, 21 Vet. App. 120 (2007). 

Thus, there is adequate medical evidence of record to make a determination in this case, and additional development by way of another examination would be redundant and unnecessary. See 38 C.F.R. §§ 3.326 and 3.327 and Green v. Derwinski, 1 Vet. App. 121 (1991). 

The Board finds that all relevant facts have been properly and sufficiently developed in this appeal and no further development is required to comply with the duty to assist the Veteran in developing the facts pertinent to his claim.

Legal Analysis

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Where an increase in an existing disability rating based upon established entitlement to compensation is at issue, the present level of disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). However, staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). Reasonable doubt as to the degree of disability will be resolved in the veteran's favor. 38 C.F.R. § 4.3.

Pertinent regulations do not require that all cases show all findings specified by the Rating Schedule, but that findings sufficiently characteristic to identify the disease and the resulting disability and above all, coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21. Therefore, the Board has considered the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the veteran, as well as the entire history of the veteran's disability in reaching its decision. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

According to Diagnostic Code 7528, active malignant neoplasms of the genitourinary system are rated as 100 percent disabling. Following the cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedures, the rating of 100 percent shall continue with a mandatory VA examination at the expiration of six months. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of 38 C.F.R. § 3.105(e). If there has been no local reoccurrence or metastasis, the disability is rated on residuals as voiding dysfunction or renal dysfunction, whichever is predominant. 38 C.F.R. § 4.115(b).

In this case, there is no evidence or allegation of a recurrence of active prostate cancer. The medical evidence and the Veteran's own contentions show that the predominant residual of his prostate cancer is voiding dysfunction.

Voiding dysfunctions are addressed under 38 C.F.R. § 4.115a, which directs that the particular condition be rated as urine leakage, urinary frequency, or obstructed voiding. 

Urinary leakage contemplates continual urine leakage, post-surgical urinary diversion, urinary incontinence, or stress incontinence. Leakage requiring the wearing of absorbent materials, which must be changed 2 to 4 times per day, warrants a 40 percent disability rating. 

Urinary frequency with a daytime voiding interval less than one hour, or awakening to void five or more times per night, warrants a 40 percent rating. 38 C.F.R. § 4.115a . 

Obstructed voiding with urinary retention requiring intermittent or continuous catheterization warrants a 30 percent evaluation. 

Based on a thorough review of the evidence, the Board finds that the preponderance of the evidence is against entitlement to an evaluation in excess of 20 percent for residuals of prostate cancer. The relevant evidence of record simply does not show that the Veteran's residuals of prostate cancer satisfy the necessary criteria. 

The report of a privately completed June 2013 VA Disability Benefits Questionnaire (DBQ) does not show that the Veteran satisfies any of the criteria for an evaluation in excess of 20 percent for his residuals of prostate cancer. 

Similarly, the report of a July 2010 VA diabetes examination reveals that the Veteran reported urinary incontinence which requires the use of one absorbent pad a day. The report of the December 2011 VA examination reveals that the Veteran's prostate cancer was in remission. The Veteran reported residual urine leakage but indicated it did not require the use of absorbent material. Daytime voiding interval was between 1 and 2 hours, and nighttime voiding was 2 times per night. The Veteran did not require the use of an appliance and had no urinary retention requiring intermittent or continuous catheterization. The report of the June 2014 VA examination provides that the Veteran had no urine leakage and an appliance was not required. Daytime voiding interval was between 2 and 3 hours, and nighttime awakening to void was 3 to 4 times. The Veteran had obstructed voiding with hesitancy and slow stream, but treatment as recounted by the report is negative for any catheterization. 

The Board has also considered the Veteran's lay statements that his disability is worse than currently evaluated. In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36 (1994); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994).

The Veteran is competent to report symptoms because this requires only personal knowledge as it comes to him through his senses. Layno, 6 Vet. App. at 470. He is not, however, competent to identify a specific level of disability of this disorder according to the appropriate diagnostic codes. Such competent evidence concerning the nature and extent of the Veteran's prostate disability has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports and the clinical records) directly address the criteria under which this disability is evaluated. As such, the Board finds these records to be more probative than the Veteran's subjective complaints of increased symptomatology. 

As noted above, the evidence simply does not show that the Veteran's disability warrants an increased evaluation under the relevant diagnostic criteria. 

Additionally, the record contains no indication that the rating criteria are inadequate to rate the Veteran's residuals of prostate cancer. The discussion above reflects that the Veteran's disability results in voiding dysfunction, which is addressed by the Rating Schedule. His symptoms are contemplated by the applicable rating criteria. Therefore, the Veteran's disability picture is contemplated by the rating schedule, the assigned evaluation is adequate, and no referral for an extraschedular consideration is required. See Thun v. Peake, 22 Vet. App. 111 (2008).

In sum, the preponderance of the evidence demonstrates that the Veteran is not entitled to an evaluation in excess of 20 percent for residuals of prostate cancer. Thus, the benefit of the doubt doctrine is not for application. See generally Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001). 


ORDER

An evaluation in excess of 20 percent for residuals of prostate cancer is denied. 

REMAND

Turning to the issue of service connection for hypertension, to include as due herbicide exposure and/or secondary to service-connected disabilities, a June 2014 VA DBQ provides the opinion that the Veteran's hypertensive disorder was less likely as not caused by or aggravated by the Veteran's coronary artery disease or peripheral vascular disease. However, this opinion is inadequate. It fails to include any explanation or rationale with respect to aggravation despite the fact that the examiner was asked to provide an explanation for all conclusions reached. In this regard, once the Secretary undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, he must provide an adequate one. See Barr, supra. 

The development requested by the Board's April 2014 remand was not fully completed with respect to this issue. A remand by the Board confers on the Veteran, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). It imposes upon VA a concomitant duty to ensure compliance with the terms of the remand. Additional development must be conducted.

Turning to the issue of an initial disability rating in excess of 30 percent for service-connected coronary artery disease with sick sinus syndrome and pacemaker implant with scar, the report of a June 2014 VA heart conditions examination reveals that the examination did not include an exercise stress test, despite the fact that the examiner stated that there was no medical contraindication for performing METs testing. Nor did the examination include a METs estimation. Rather, the report provides the result of private testing done in July 2013. 

The June 2014 VA heart conditions examination also failed to conduct any pulmonary function tests. Again, it merely provides results from private testing done in June 2010 and February 2013.

The June 2014 VA examination's failure to include a current exercise stress test and/or pulmonary function test renders it inadequate. Moreover, the Board's April 2014 remand specified that all indicated evaluations, studies, and tests deemed necessary by the examiner should be accomplished. The relevant rating criteria for coronary artery disease refers to METs and results of pulmonary function testing. See 38 C.F.R. § 4.104, Diagnostic Code 7005. Thus, the Board finds that exercise stress testing and pulmonary function tests are indicated and must be accomplished. The development requested by the Board's April 2014 remand was not fully completed with respect to this issue. A remand by the Board confers on the Veteran, as a matter of law, the right to compliance with the remand orders. Thus, in the present case additional development must be conducted. See Stegall, supra. 

In addition, the Board finds it significant that the July 2013 private exercise stress test result (5.8 METs) is more severe than the most recent VA exercise stress test result of March 2011 (estimated 7 METs). Given this evidence of increased severity, testing to determine the nature and current level of severity of the Veteran's service-connected coronary artery disease with sick sinus syndrome and pacemaker implant with scar is required. Statutes and regulations require that VA assist a claimant by providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on a claim. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. 

Turning to the claim for a TDIU, the June 2014 VA DBQ in essence provides both that the examiner could not comment on the Veteran's unemployability, and that it was less likely as not that the Veteran's service-connected disabilities singly rendered him unemployable. This contradiction makes the medical opinion inadequate. Thus, the development requested by the Board's April 2014 remand was not fully completed with respect to this issue. A remand by the Board confers on the Veteran, as a matter of law, the right to compliance with the remand orders. Thus, in the present case additional development must be conducted. See Stegall, supra.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Forward copies of all relevant records from the Veteran's eFolders to the examiner who provided the July 2012 VA DBQ (or a suitable substitute if this individual is unavailable) for an addendum. 

Following a review of the relevant evidence from the Veteran's eFolders, including the June 2014 VA DBQ, the examiner is requested to provide an opinion as to whether it is at least as likely as not (i.e., a fifty percent or greater probability) that the Veteran's hypertensive disorder was aggravated by the Veteran's service-connected coronary artery disease or peripheral vascular disease. 

The examiner should provide an explanation for all conclusions reached. 

The examiner is informed that aggravation is defined for legal purposes as a chronic worsening of the underlying condition versus a temporary flare-up of symptoms, beyond its natural progression. If aggravation is present, the clinician should indicate, to the extent possible, the approximate level of hypertension (i.e., a baseline) before the onset of the aggravation. 

An additional examination of the Veteran should be scheduled only if deemed necessary to provide the requested opinion.

2. Schedule the Veteran for an exercise stress test and a pulmonary function test by an appropriate VA examiner to determine the nature and current level of severity of his service-connected coronary artery disease with sick sinus syndrome and pacemaker implant with scar. Copies of all relevant records from the Veteran's eFolders must be forwarded to the examiner. 

All pertinent findings should be identified and a complete rationale for all opinions expressed must be provided. 

3. Schedule the Veteran for an examination by an appropriate VA examiner to determine whether the Veteran's service-connected disabilities render him unemployable. Copies of all relevant records from the Veteran's eFolders must be forwarded to the examiner. 

The examiner is requested to provide an opinion as to whether it is at least as likely as not (i.e., a fifty percent or greater probability) that the Veteran's service-connected disabilities, either singly or taken together, render him unable to secure or follow a substantially gainful occupation. 

All pertinent findings should be identified and a complete rationale for all opinions expressed must be provided. 

4. Then, readjudicate the Veteran's claim. If any benefit sought on appeal remains denied, the appellant and his representative should be provided a supplemental statement of the case and afforded an opportunity to respond. The case should be returned to the Board for appellate review.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs