Citation Nr: 1528210 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 12-11 350 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to an increased disability rating in excess of 60 percent for varicose veins, right lower extremity. 

2. Entitlement to an increased disability rating in excess of 10 percent for varicose veins status post saphenous vein ligation and stripping with scar, left lower extremity. 


ATTORNEY FOR THE BOARD

D. Chad Johnson, Associate Counsel



INTRODUCTION

The Veteran served on active duty from December 1982 to December 1986. 

This appeal comes before the Board of Veterans' Appeals (Board) form a June 2009 decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia. Jurisdiction over the matter was subsequently transferred to the RO in Detroit, Michigan. 

These matters were previously remanded by the Board in October 2013 and October 2014. As discussed below, the Board finds there has been substantial compliance with prior remand directives, such that an additional remand is not required. See Stegall v. West, 11 Vet. App. 268 (1998) (holding that a remand by the Court or the Board confers the right to compliance with remand orders); see Dyment v. West, 13 Vet. App. 141 (1999) (holding that remand not required under Stegall where there was substantial compliance with remand directives). 


FINDINGS OF FACT

1. For the entire period on appeal, the Veteran's varicose veins of the right lower extremity have been manifested by no worse than subjective pain, swelling, and cramping; objective varicose veins with persistent edema and stasis pigmentation, without eczema, ulceration, or massive board-like edema with constant pain at rest; and regular use of compression stockings. 

2. For the entire period on appeal, the Veteran's varicose veins of the left lower extremity, status post saphenous vein ligation and stripping, have been manifested by no worse than subjective pain and swelling; objective varicose veins without edema, stasis pigmentation, eczema, or ulceration; regular use of compression stockings; and a residual scar with is not painful or unstable. 



CONCLUSIONS OF LAW

1. The criteria for an increased disability rating in excess of 60 percent for varicose veins, right lower extremity, have not been met for any period on appeal. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.7, 4.10, 4.104, Diagnostic Code (DC) 7120 (2014). 

2. The criteria for an increased disability rating in excess of 10 percent for varicose veins status post saphenous vein ligation and stripping with scar, left lower extremity, have not been met for any period on appeal. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.3, 4.7, 4.10, 4.104, Diagnostic Code (DC) 7120. 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process

VA has statutory duties to notify and assist claimants in substantiating a claim for VA benefits. See, e.g., 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2014). Regarding his increased rating claims, the Veteran is entitled to generic notice of the evidence needed to substantiate an increased rating claim, namely evidence demonstrating a worsening or increase in severity of the disability, and general notice of how disability evaluations and effective dates are assigned. Vazquez-Flores v. Shinseki, 24 Vet. App. 94, 97-103 (2010). Such notice was provided within a December 2008 notice letter sent to the Veteran. 

Regarding the duty to assist, the RO has obtained and associated with the claims file the Veteran's relevant VA treatment records, including VA examination reports, private treatment records, and the Veteran's lay statements. 

VA provided relevant examinations in January 2009 and, following the prior Board remands, in January 2014 and January 2015. When read together and considered as a whole, the VA examinations and opinions of record are adequate to decide the Veteran's claims on appeal because they were based on thorough examinations, appropriate diagnostic tests, and reviews of the Veteran's medical history; moreover, they contain sufficient information to allow the Board to apply the relevant rating criteria. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007) (holding an examination is considered adequate when it is based on consideration of the appellant's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's evaluation of the disability will be a fully informed one). Additionally, following October 2013 and October 2014 Board remands, the RO obtained additional VA and private treatment records as directed. Given the above development, the Board finds that there has been substantial compliance with prior remand directives, and no further remand is required. See Stegall, 11 Vet. App. 268; see also Dyment, 13 Vet. App. 141. 

The Veteran has not identified any additional evidence to be added to the claims file. As all necessary development has been accomplished, no further notice or assistance is required for a fair adjudication of the Veteran's claims and, therefore, appellate review may proceed without prejudice to the Veteran. 


II. Increased Ratings - Varicose Veins, Bilateral Lower Extremities 

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. 38 C.F.R. Part 4 (2014). The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degree of disabilities specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2014). Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned to the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2014). Any reasonable doubt regarding the degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2014). However, the evaluation of the same disability under various diagnoses, known as pyramiding, is to be avoided. 38 C.F.R. § 4.14 (2014). 

Whether the issue is one of an initial rating or an increased rating, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as "staged" ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). The relevant temporal focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Id. Thus, in deciding the increased rating claims on appeal, the Board has considered the relevant temporal period from one year prior to the Veteran's August 2008 claim, or from August 2007 to the present. The Board has also considered whether a staged rating is warranted, but finds that the evidence does not support a staged rating for any period on appeal. 

The Veteran's varicose veins of the right lower extremity and varicose veins of the left lower extremity, status post saphenous vein ligation and stripping with scar, are currently rated as 60 percent and 10 percent disabling, respectively, under Diagnostic Code (DC) 7120. 38 C.F.R. § 4.104, DC 7120 (2014). Under the relevant rating criteria, varicose veins with intermittent edema of extremity or aching and fatigue in leg after prolonged standing or walking, with symptoms relieved by elevation of extremity or compression hosiery warrants a 10 percent disability rating. Id. Varicose veins with persistent edema, incompletely relieved by elevation of extremity, with or without beginning stasis pigmentation or eczema, warrants a 20 percent disability rating. Id. Varicose veins with persistent edema and stasis pigmentation or eczema, with or without intermittent ulceration, warrants a 40 percent disability rating. Id. Varicose veins with persistent edema or subcutaneous induration, stasis pigmentation or eczema, and persistent ulceration warrants a 60 percent disability rating. Id. Finally, varicose veins with massive board-like edema with constant pain at rest warrants a maximum schedular 100 percent disability rating. Id. 

As discussed below, after review of the claims file, the Board finds that the preponderance weighs against the Veteran's claims of entitlement to an increased disability rating in excess of 60 percent for varicose veins of the right lower extremity, and entitlement to an increased disability rating in excess of 10 percent for varicose veins of the left lower extremity, status post saphenous vein ligation and stripping with scar. 

Turning to the chronological evidence of record during the relevant temporal period beginning in August 2007, VA treatment records from November 2007 document the Veteran's request for new support stockings. It was noted at the time that he had varicose veins in his lower extremities, with full range of motion and no edema. 

In July 2008, the Veteran complained of intermittent, achy pain in his lower extremities which required over the counter pain medication. He reported that his symptoms had improved following surgery on his left lower extremity and he requested evaluation of his right lower extremity. The following month, the Veteran reported a recent episode of uncontrolled bleeding in his right lower extremity. The physician noted large varicosities on his right medial calf with chronic skin changes, scabbing to his right ankle and foot, multiple spider veins, and chronic generalized edema in the right leg, with a small varice on the posterior left calf. 

A September 2008 venous ultrasound showed no evidence of deep vein thrombosis (DVT) in the bilateral lower extremities. The physician noted the Veteran was a suitable candidate for endovenous laser therapy (ELVT). 

Private treatment records from October 2008 document the Veteran's complaint of increased swelling, throbbing, aching, and varicose veins in his right leg, which was severely disabling and lifestyle limiting, although the physician also noted that he continued to work for the post office. Physical examination documented varicosities of the right lower extremity with edema and skin induration; the left lower extremity was warm, pink, and well perfused, without edema. Similarly, a November 2008 private treatment note also documented severe progressive venous insufficiency of the right lower extremity, despite maximal medical therapy, with severe lifestyle limiting symptoms. 

The Veteran was first afforded a VA examination in conjunction with his increased rating claim in January 2009, at which time he reported leg pain, constant edema unrelieved by foot elevation or compression stockings, dark pigmentation of the skin, and persistent ulceration, without eczema. A physical examination revealed varicose veins of the right leg with moderate edema, elevated edema, and stasis pigmentation, without eczema or ulcer. There were also varicose veins noted on the left leg, without ulcer, edema, stasis pigmentation, or eczema. The examiner further noted a residual surgical scar on the Veteran's left shin which measured 2 cm by 1 cm; however, there was no resulting tenderness, disfigurement, ulceration, adherence, instability, tissue loss, inflammation, edema, keloid formation, hypopigmentation, hyperpigmentation, abnormal texture, or limitation of range of motion. Regarding the effect of the Veteran's condition on his usual occupation, the examiner noted an inability to drive or sit with his legs bent for long periods of time and an inability to stand for long periods of time. 

A September 2009 review of systems contained within VA treatment records documents that the Veteran's had prominent varicose veins on his medial right calf which were nontender on palpation. He had full range of motion in all extremities, with no focal tenderness, clubbing, cyanosis, or edema. Private treatment records from the same month document the Veteran's report of severe symptoms in his right leg, including daily swelling and discomfort, inability to sleep at night, which required daily compression stockings, elevation, and pain medications. An objective examination focused on the right lower extremity revealed mild edema, varicosities, and fascial defect, without calf tenderness or phlebitic cords. The private physician noted his concern that the Veteran's condition could progress into skin changes and venous stasis ulcers if not treated. 

VA treatment records from January 2010 document that the Veteran's lower extremities were warm, without erythema, cellulitis, edema, or tenderness. 

In July 2010, the Veteran reported ongoing pain and trouble sleeping. He stated that his feet would swell while working as a truck driver, and that he would have to pull over and get out of the truck for relief. He further noted that his left leg was increasingly bothersome and that his main complaints were not getting enough sleep and trouble performing his job duties. 

An August 2010 review of systems within VA treatment records documents varicose veins on the Veteran's right calf, which were nontender on palpation. The Veteran had full range of motion in all extremities, without focal tenderness, ulcers, clubbing, cyanosis, or edema. 

The Veteran was seen again at a VA medical center for leg pain due to varicose veins in April 2012. The following month, his VA Form 9 substantive appeal reported a worsening condition, with ongoing pain, including while driving a truck for work, and trouble sleeping. 

VA treatment records from May 2012 and August 2012 document that there was no lower extremity edema upon examination. A venous ultrasound in April 2013 revealed the Veteran's chronic venous insufficiency with superficial venous reflux disease. His physician recommended use of compression stockings; he also discussed endovenous catheter ablation of the right leg, and the Veteran preferred to have the procedure done in May or June. VA treatment records from September 2013 document the Veteran's varicose veins of the right lower extremity, without cords, tenderness, or ulceration; additionally, there was no lower extremity edema noted. A November 2013 letter from a private physician documents that the Veteran was medically excused from work for five days in November 2013. 

The Veteran was afforded an additional VA examination in January 2014. The Veteran reported subjective pain in the lower extremities. A physical examination revealed visible and palpable varicose veins in the right lower extremity, without tenderness, and a positive Doppler exam for venous reflux disease. Regarding the left lower extremity, a clinical examination and Doppler exam were unremarkable. There was no edema, tenderness, stasis dermatitis, eczema, or ulceration in either lower extremity. Following a review of the claims file, medical history, treatment records, and a physical examination, the VA examiner diagnosed the Veteran with varicose veins of the right lower extremity, without complications, which resulted in the Veteran's subjective complaints of pain, including while working as a truck driver. 

A private treatment record from February 2014 contains a list of prescription medications, including a recent prescription for ammonium lactate to treat the Veteran's dry skin on his lower extremities. 

In December 2014, the Veteran reported that he was still experiencing pain from his varicose veins. In particular, he noted more problems performing his job as truck driver due to painful cramps in his right leg while his legs were bent and an inability to get sufficient sleep due to pain, despite prescription and over the counter pain medications. 

The Veteran was most recently afforded a VA examination in January 2015. After a physical examination, the examiner documented chronic venous insufficiency of the Veteran's right lower extremity, resulting in recurrent edema incompletely relieved by elevation, tenderness, and persistent stasis pigmentation, without any dermatitis, eczema, induration, or ulceration. Regarding the Veteran's left lower extremity, status post saphenous vein ligation and stripping, the examiner noted there was no edema, tenderness, stasis dermatitis, eczema, or ulceration. Residual surgical scars related to the Veteran's condition were not painful or unstable, and occupied an area less than 39 square centimeters. The Veteran reported regular use of bilateral compression stockings, and functional impact upon his occupation as a truck driver for the post office including pain and swelling in his right lower extremity after prolonged sitting and/or standing. 

Based upon the lay and medical evidence of record, the Board concludes that the preponderance of the evidence weighs against the Veteran's claims and that increased ratings in excess of 60 percent for varicose veins of the right lower extremity and in excess of 10 percent for varicose veins of the left lower extremity are not warranted for any period on appeal. 

As noted above, to warrant an increased disability rating of 100 percent for his varicose veins of the right lower extremity, the preponderance of evidence would have to show that his right lower extremity varicose veins manifested with massive board-like edema with constant pain at rest. 38 C.F.R. § 4.104, DC 7120. As discussed above, while the Veteran has consistently reported that his condition causes ongoing pain, neither the lay nor medical evidence of record reflects that his right lower extremity varicose veins have resulted in massive board-like edema at any time during the appeal.

In order to warrant an increased 20 percent disability rating for his left lower extremity varicose veins, the preponderance of evidence would have to show that his left lower extremity varicose veins manifested with persistent edema, incompletely relieved by elevation of extremity, with or without beginning stasis pigmentation or eczema. Id. 

Likewise, as the Veteran has not shown the required severity of symptoms for an increased 20 percent disability rating for his left lower extremity varicose veins, it follows that he has not shown the more severe rating criteria required for an increased 40, 60, or 100 percent disability rating. Id. 

To the extent that the Veteran has alleged inadequacy in the January 2014 VA examination, the Board finds that his assertions are insufficient to overcome the presumption of regularity applying to government officials, such as VA examiners conducting compensation examinations. The United States Court of Appeals for Veterans Claims (Court) has held that there is a presumption of regularity which holds that government officials are presumed to have properly discharged their official duties. See Ashley v. Derwinski, 2 Vet. App. 62, 64-65 (1992). Both the Court and the Federal Circuit have held that the Board is entitled to presume the competence of a VA examiner and specific challenges to a VA examiner's competency must be raised by the appellant to overcome this presumption. See Rizzo v. Shinseki, 580 F.3d 1288 (Fed. Cir. 2009); Bastien v. Shinseki, 599 F.3d 1301 (Fed. Cir. 2010); see also Cox v. Nicholson, 20 Vet. App. 563, 569 (2007) (citing Hilkert v. West, 12 Vet. App. 145, 151 (1999)). 

With regard to the Veteran's specific assertion that the January 2014 VA examination was not complete or thorough because the examiner was rushed due to running 45 minutes late for the appointment, the Board finds that the VA examination report does not reflect such a finding. To the extent that the examiner did not document his residual surgical scar, such oversight is harmless, as the Board has considered additional evidence of record which documents the Veteran's scars do not warrant a separate compensable rating. In sum, the evidence does not reflect irregularities or inadequacies in the January 2014VA examination or the resulting examination report, which the Board finds to be adequate for rating purposes, especially when considered in light of the additional adequate VA examinations of record. 

The Board acknowledges that the Veteran is competent to report his observable symptoms, including the presence of visible varicose veins. See Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Barr v. Nicholson, 21 Vet. App. 303 (2007). However, the Veteran does not possess the medical expertise required to assess specific and complex manifestations of his conditions such as those contained within the relevant rating criteria. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); see also 38 C.F.R. § 4.104, DC 7120. Therefore, to the extent the Veteran has asserted entitlement to an increased disability rating, the Board affords more probative weight to the objective medical evidence of record discussed above, including the VA examinations of record. 

The Board has also considered whether an increased disability rating or a separate compensable disability rating is warranted under an alternate diagnostic code, such as DC 7121 regarding post-phlebitic syndrome of any etiology or DC 7804 regarding painful or unstable scars; however, based upon the evidence of record discussed above, the Board finds that no other potentially applicable diagnostic code would lead to an increased disability rating during the entire period on appeal. 

In sum, the preponderance of evidence weighs against the Veteran's claims of entitlement to increased ratings for his varicose veins of the bilateral lower extremities. As the preponderance of the evidence is against the Veteran's claims, there is no reasonable doubt to be resolved, and the claims must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


III. Other Considerations - Extraschedular & TDIU

The Board has also considered whether referral is warranted in this case for an extraschedular rating. To accord justice in an exceptional case where the scheduler standards are found to be inadequate, case may be referred to the Chief Benefits Director or the Director of Compensation Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b)(1) (2014). 

Extraschedular consideration involves a three-step analysis. Thun v. Peake, 22 Vet. App. 111 (2008). First, the Board or the RO must determine whether the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe the Veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. Id. 

If the RO or the Board finds that the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the Veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the Under Secretary for Benefits or the Director of Compensation Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id. 

In this case, the lay and medical evidence of record fails to show unique or unusual symptomatology regarding the Veteran's service-connected varicose vein disabilities that would render the schedular criteria inadequate. The Veteran's symptoms, including subjective pain, swelling, and cramping; and objective bilateral varicose veins with persistent edema and stasis pigmentation of the right lower extremity are contemplated in the ratings assigned; thus, the application of the Rating Schedule is not rendered impractical. Moreover, the Veteran has not argued that his symptoms are not contemplated by the rating criteria; rather, he has merely disagreed with the assigned disability ratings for his level of impairment. In other words, he does not have any symptoms from his service-connected varicose veins that are unusual or different from those contemplated by the schedular criteria. Nor has he alleged or indicated that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). Accordingly, referral for consideration of an extraschedular rating is not warranted, as the manifestations of the Veteran's varicose vein disabilities are considered by the schedular ratings assigned. Based on the foregoing, the Board finds the schedular evaluations are adequate, and referral is not required. 38 C.F.R. § 3.321; Thun, 22 Vet. App. 111. 

While the Veteran has consistently reported functional impact upon his ability to work as a truck driver for the postal service, including pain, swelling, and cramping which affect him during the performance of his occupation duties, he has not specifically asserted that his conditions render him completely unemployable. Moreover, the evidence of record does not otherwise indicate that his varicose vein disabilities have rendered him unemployable. Indeed, it appears that for the entire period on appeal, the Veteran has maintained employment as a truck driver for the postal service; thus, there is no indication that the Veteran's varicose vein disabilities completely prevent him from securing or following a substantially gainful occupation. Consequently, the matter of entitlement to a total disability rating based on individual unemployability (TDIU) is not raised by the Veteran or the evidence of record. See Rice v. Shinseki, 22 Vet. App. 447 (2009). 



ORDER

An increased disability rating in excess of 60 percent for varicose veins, right lower extremity, is denied for the entire period on appeal. 

An increased disability rating in excess of 10 percent for varicose veins status post saphenous vein ligation and stripping with scar, left lower extremity, is denied for the entire period on appeal. 



____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs