Citation Nr: 1706062 
Decision Date: 02/02/17 Archive Date: 03/03/17

DOCKET NO. 13-00 223 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Nashville, Tennessee


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for a gastrointestinal (GI) disorder.

2. Entitlement to service connection for a GI disorder. 

3. Entitlement to service connection for neurological impairment of the lower extremities.

4. Entitlement to a disability rating in excess of 10 percent for vascular impairment of the right lower extremity (varicose veins). 

5. Entitlement to a disability rating in excess of 0 percent for a skin disability of the right knee (surgical scars). 

6. Entitlement to restoration of a 10 percent rating for lateral instability of the right knee, to include whether a rating in excess of 10 percent is warranted. 

7. Entitlement to a disability rating in excess of 10 percent for arthritis of the right knee (degenerative joint disease). 


REPRESENTATION

Appellant represented by: The American Legion 


ATTORNEY FOR THE BOARD

L. Cramp, Counsel


INTRODUCTION

The appellant is a veteran (the Veteran) who had active duty service from June 1976 to June 1980. 

This appeal comes before the Board of Veterans' Appeals (Board) from rating decisions of the RO in Nashville, Tennessee dated in August 2010, September 2010, and May 2012.

The Board has considered whether the issue of TDIU entitlement is a component of the increased rating claims in accordance with Rice v. Shinseki, 22 Vet. App. 447 (2009) (where there is evidence of unemployability raised by the record during a rating appeal period, the TDIU is an element of an initial rating or increased rating). However, in this case, the Veteran has not asserted that her service-connected disabilities have rendered her unable to secure or follow a substantially gainful occupation. 

The Veteran submitted additional medical evidence after the most recent Supplemental Statement of the Case and waived her right to have the claim remanded to the RO for initial consideration of this evidence. See November 4, 2016, Informal Hearing. 

The Board notes that the rating restoration claim was not adjudicated by the RO but is reasonably raised under the record before the Board. As the Board is granting the benefit, there is no prejudice in the Board addressing the matter in the first instance. See Bernard v. Brown, 4 Vet. App. 384 (1993).

The issues of entitlement to service connection for a GI disorder and entitlement to an increased disability rating for the right knee disability are addressed in the REMAND below and are therein REMANDED to the RO via the Appeals Management Center (AMC) in Washington, DC. VA will notify the Veteran if further action is required.


FINDINGS OF FACT

1. In a July 1980 rating decision, the RO denied service connection for a GI disorder; at the time of that decision, the evidence substantiated a single episode of treatment in service for irritable bowel, but did not substantiate a current GI disorder or a nexus between a current disorder and service.

2. The evidence received since the July 1980 decision addresses the unestablished fact of a current GI disorder and raises a reasonable possibility of substantiating the claim. 

3. The Veteran's neurological impairment of the lower extremities is not related to service and is not related to or permanently worsened beyond natural progress by a service-connected disability or disabilities. 

4. For the entire period on appeal, the Veteran's right lower extremity varicose veins have been manifested by intermittent edema of extremity or aching and fatigue in the leg after prolonged standing or walking, with symptoms relieved by elevation of extremity or compression hosiery. 

5. For the entire period on appeal, the Veteran's right knee surgical scars have been manifested by two tender scars. 

6. The rating for lateral instability of the right knee was improperly reduced from 10 percent to 0 percent in the August 2010 rating decision in which a separate 10 percent rating for arthritis was established. 


CONCLUSIONS OF LAW

1. The criteria for reopening the claim of entitlement to service connection for a GI disorder are met. 38 U.S.C.A. §§ 5103, 5103A, 5107, 5108 (West 2014); 38 C.F.R. §§ 3.102, 3.156, 3.159 (2016).

2. Neurological impairment of the lower extremities was not incurred in service and is not proximately due to, a result of, or aggravated by a service-connected disability or disabilities. 38 U.S.C.A. §§ 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310 (2016).

3. The criteria for a disability rating higher than 10 percent for the right lower extremity vascular disability have not been met for any period. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.104, Diagnostic Code 7121 (2016).

4. The criteria for a disability rating or 10 percent for the right knee skin disability have been met; the criteria for a rating in excess of 10 percent have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.118, Diagnostic Code 7804 (2016).

5. The criteria for restoration of a separate 10 percent rating for right knee lateral instability have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.951, 4.71a, Diagnostic Code 5257 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection-Law and Regulations

VA law provides that, for disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, or other than a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation, except if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs. 38 U.S.C.A. §§ 1110, 1131 (West 2014). 

Entitlement to service connection on a direct basis requires (1) evidence of current nonservice-connected disability; (2) evidence of in-service incurrence or aggravation of disease or injury; and (3) evidence of a nexus between the in-service disease or injury and the current nonservice-connected disability. 38 C.F.R. § 3.303(a); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection on a secondary basis requires (1) evidence of a current nonservice-connected disability; (2) evidence of a service-connected disability; and (3) evidence establishing that the service-connected disability caused or aggravated the current nonservice-connected disability. 38 C.F.R. § 3.310(a),(b); Wallin v. West, 11 Vet. App. 509, 512 (1998). 


Application to Reopen

The RO initially denied a claim for service connection for a GI disorder, claimed as irregular indigestion, in a July 1980 rating decision. Although notified of the RO's decision and of her right to appeal, the Veteran did not initiate an appeal of that decision (see 38 C.F.R. § 20.200 (2016)). 

The July 1980 rating decision is the last disallowance on any basis. See Evans v. Brown, 9 Vet. App. 273, 282-3 (1996), overruled on another basis by Hodge v. West 155 F.3d. 1356 (Fed. Cir. 1998) (the Board must review all evidence submitted by or on behalf of a claimant since the last disallowance on any basis to determine whether a claim must be reopened). 

VA may reopen a claim that has been previously denied if new and material evidence is submitted by or on behalf of a veteran. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a). Here, the Veteran requested to have the previously denied claim reopened in March 2010. 

New evidence is defined as evidence not previously submitted to agency decision makers and material evidence is evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

Where new and material evidence is received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed, it will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period. 38 C.F.R. § 3.156(b). 

To reopen a claim, it is not required that new and material evidence be received as to each previously unproven element of a claim. Where a prior denial was based on lack of current disability and nexus, newly submitted evidence of a current disability was, in concert with evidence already of record establishing an injury in service, new and material and sufficient to reopen the claim and obtain an examination. See Shade v. Shinseki, 24 Vet. App. 100 (2010).

For purposes of the "new and material" analysis, the credibility of the evidence is presumed. Justus v. Principi, 3 Vet. App. 510, 512-513 (1992).

At the time of the July 1980 rating decision, the evidence established Shedden element (2). The evidence of record included a service treatment record dated June 1977, which established a diagnosis of irritable bowel. The evidence did not substantiate element (1), in that there was no record of a post-service disability. The evidence also did not substantiate element (3), in that there was no relationship between the in-service diagnosis of irritable bowel and a post-service disability. 

Received since the July 1980 decision are VA treatment records, which include a July 13, 2012, VA Gastroenterology Note. That record contains a diagnostic entry for symptoms of IBS (irritable bowel syndrome). Other gastroenterology notes indicate that the Veteran is being followed in the GI clinic for dyspepsia and functional constipation and "chronic constipation". See VBMS record 12/02/2013, Pgs. 75, 82.

The Veteran has also provided competent testimony that her current symptoms are similar to those experienced in service. As noted above in Justus, the Veteran's statements are presumed credible for purposes of reopening. As noted above in Shade, to reopen a claim, the evidence need not conclusively establish service connection, but need only be sufficient to obtain a VA examination. 

Here, the additional evidence relates to the unestablished facts of a current disability and a nexus between the current disability and service. Moreover, it raises a reasonable possibility of substantiating the claim. Accordingly, the Board concludes that reopening of the claim is warranted. The reopened claim will be further addressed in the Remand below. 

Neurological Impairment of the Lower Extremities

The Veteran asserts that she was diagnosed with bilateral lower extremity neuropathy in the service. She alternately asserts that the current neurological impairment of the lower extremities resulted from her right knee injury, sustained in service, and/or that it is secondary to her service connected pes planus. 

Service treatment records reveal an October 5, 1977, Health Record with a finding of neuritis in the right hip. There is otherwise no complaint of, treatment for, or diagnosis of, peripheral neuropathy, neuropathy, or other chronic neurological disorder of the lower extremities. The Veteran was examined at service separation and was found to be clinically normal with respect to neurologic examination. She completed a report of medical history at that time and, notwithstanding the 1977 diagnosis of neuritis, she reported no history of neuritis, or current neuritis. 

After service, the Veteran was afforded a VA examination in May 1981. Findings for the nervous system were normal.

The first reference to lower extremity neuropathy comes in the context of the current claim, some 30 years after service separation. Notably, the Veteran filed a service connection claim at service separation in June 1980, but she did not mention a neurological disorder of the lower extremities at that time. 

While silence regarding a specific disorder or symptoms of a disorder at the time of filing of the initial service connection claim is not conclusive evidence as to lack of symptoms, when viewed in the context of the contemporaneous service separation examination, which included normal neurological findings, and the Veteran's statement that she did not have current neuritis, the evidence in combination is highly persuasive that she did not have a neurological disorder affecting the lower extremities at the time of service separation. This is also probative evidence with respect to a finding that she did not incur such a disorder in service. 

The Veteran was afforded a VA examination in April 2012. The examiner noted that EMG/NC (electromyelogram/nerve conduction velocities) studies were normal, bilaterally. The examiner found that there was no specific peripheral nerve disorder. Rather, the Veteran's symptoms were due to lumbar degenerative disc disease. The examiner opined that this condition was less likely than not (less than 50 percent probability) incurred in or caused by service. The rationale for this opinion was that, although the Veteran had a positive straight-leg-raise test in service, the impression at the time (April 1978) was pain secondary to pes planus. The Veteran was subsequently referred to the podiatry clinic for arch supports. According to the April 2012 examiner, the Veteran's low back pain started only 1-2 years ago and a lumbar spine MRI does not show spinal stenosis. The examiner also referred to the "essentially normal" EMG/NC study. 

The Board acknowledges that there are references in the clinical record to peripheral neuropathy, such as a January 9, 2013, VA Neurology Note. However, that examiner referred specifically to the November 2012 examination report and the EMG/NC findings, and did not dispute them. The Board finds that the January 2013 reference to peripheral neuropathy is not contradictory to the opinion of the VA examiner that there was no peripheral nerve disorder, but that symptoms were due to degenerative disc disease. Rather, it seems to indicate a broader definition of the term peripheral neuropathy than was used by the November 2012 examiner. In any case, the reference to peripheral neuropathy by the January 2013 examiner does not suggest causation of this condition other than by lumbar degenerative disc disease. 

The Board acknowledges the Veteran's argument that pes planus is a service connected disability and that the April 2012 examiner discussed a relationship between in-service clinical results and pes planus. However, this reference does not establish an etiologic relationship between pes planus and a current neurological disorder affecting the lower extremities. It was simply an explanation of positive straight-leg-raise testing in service. 

There is no medical opinion of record that purports to establish attribution of neurological impairment affecting the lower extremities to any other cause than the diagnosed lumbar degenerative disc disease, or purporting to relate degenerative disc disease to service or a service connected disability. The Veteran's lay assertions are the only evidence in favor of such a relationship. 

Generally, lay evidence is competent with regard to identification of a disease with unique and readily identifiable features which are capable of lay observation. See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007). A lay person may speak to etiology in some limited circumstances in which nexus is obvious merely through observation, such as sustaining a fall leading to a broken leg. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Lay persons may also provide competent evidence regarding a contemporaneous medical diagnosis or a description of symptoms in service which supports a later diagnosis by a medical professional. However, a lay person is not competent to provide evidence as to more complex medical questions, i.e., those which are not capable of lay observation. Lay statements are not competent evidence regarding diagnosis or etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever); Jandreau, at 1377, n. 4 ('sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer'); 38 C.F.R. § 3.159(a)(2).

The Board finds that relating a current diagnosis of a disease process such as degenerative disc disease to service is not the equivalent of relating a broken bone to a concurrent injury to the same body part (Jandreau, at 1377). Such an opinion requires knowledge of the potential causes of the disease and the inherently medical question of how events in service may have contributed to bring about the remote incurrence of the disease. These are not matters which are capable of lay observation. Accordingly, the Veteran's lay statements are not competent evidence of an etiologic relationship between the claimed degenerative disc disease and service. To the extent the Veteran asserts that she has any other neurological disorder affecting the lower extremities, this is also not competent evidence. 

In correspondence received May 2011, the Veteran stated that the symptoms were caused by a strained soleus muscle rubbing against a nerve all the way up to her neck. She believes it is the same problem she had in service and this caused her to injure her knee in service. She also stated that she was told by a VA representative that she was diagnosed with bilateral lower neuropathy on active duty in October 1977. 

While the Veteran is competent to relate a medical diagnosis provided to her by a treatment provider, her VA treatment records do not reflect such a diagnosis. In comparison to the VA examination conducted specifically to determine the etiology of her complaints, the Veteran's description of this alternative diagnosis is not as persuasive. Moreover, any link between the described condition and service is not established. Her stated belief that she had the same condition in service is not competent evidence. 

Regarding the assertion that the Veteran was actually diagnosed with chronic bilateral neuropathy in the service, this is simply not the case. The treatment record has been reviewed and the diagnosis was "neuritis" of the right hip. The Board observes that neuritis is not synonymous with chronic neuropathy. While the terms are related, and obviously refer to the nerves, neuritis simply indicates inflammation of a nerve, and as such, is a description of symptoms. See Dorland's Illustrated Medical Dictionary 1282 (31st ed. 2007)). Neuropathy implies actual pathology of a nerve or nerves. See Dorland's Illustrated Medical Dictionary 1287 (31st ed. 2007)). A reference to neuritis of the right hip in service is too tenuous a link to establish an etiology between symptomatology noted in service and the current degenerative disc disease. 

In sum, the Board finds that the Veteran's claimed symptomatology is attributable to a nonservice connected disorder, and concludes that service connection for neurological impairment of the lower extremities is not warranted. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

Increased Ratings-Law and Regulations

Disability ratings are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two ratings are potentially applicable, the higher rating will be assigned if the disability more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. See 38 C.F.R. § 4.3.

A disability rating may require re-evaluation in accordance with changes in a veteran's condition. Thus, it is essential that the disability be considered in the context of the entire recorded history when determining the level of current impairment. See 38 C.F.R. § 4.1. See also Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Nevertheless, where a veteran is appealing the rating for an already established service-connected condition, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, when an appeal is based on the assignment of an initial rating for a disability, following an initial award of service connection for this disability, the rule articulated in Francisco does not apply. Fenderson v. West, 12 Vet. App. 119 (1999). Instead, the evaluation must be based on the overall recorded history of a disability, giving equal weight to past and present medical reports. Id. Staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection of parts of the musculoskeletal system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. The functional loss may be due to absence of part, or all, of the necessary bones, joints, and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 206-07 (1995).

Right Lower Extremity Vascular Disability 

The current appeal arises from a claim of entitlement to service connection for various disorders of the right lower extremity received at the RO on March 23, 2010. The Veteran subsequently clarified that she was seeking service connection for pain and swelling of the right lower extremity in correspondence received in April 2010. In a September 2010 rating decision, the RO granted service connection for right lower leg swelling (edema), which is essentially a description of symptoms. An initial rating of 10 percent was assigned under Diagnostic Code 7121 (post-phlebitic syndrome of any etiology), effective March 23, 2010. The RO also denied service connection for the specific condition of varicose veins. In a December 2012 rating decision, the RO corrected what it described as harmless error by granting service connection for varicose veins in substitution of the previous description of edema. The same rating and effective date were retained; however, the diagnostic code was changed to 7120 (varicose veins). The Board observes that the criteria under Diagnostic Codes 7120 and 7121 are identical. Therefore, there is no prejudice resulting from the change of codes. See Pernorio v. Derwinski, 2 Vet. App. 625, 629 (1992) (any change in a diagnostic code by a VA adjudicator must be specifically explained).

Under Diagnostic Code 7120, varicose veins are entitled to a rating of 100 percent with the following findings attributed to the effects of varicose veins: Massive board-like edema with constant pain at rest. A 60 percent rating is warranted with persistent edema or subcutaneous induration, stasis pigmentation or eczema, and persistent ulceration. A 40 percent rating is warranted with persistent edema and stasis pigmentation or eczema, with or without intermittent ulceration. A 20 percent rating is warranted with persistent edema, incompletely relieved by elevation of extremity, with or without beginning stasis pigmentation or eczema. A 10 percent rating is warranted with intermittent edema of extremity or aching and fatigue in leg after prolonged standing or walking, with symptoms relieved by elevation of extremity or compression hosiery. A 0 percent rating is warranted with asymptomatic palpable or visible varicose veins. See 38 C.F.R. § 4.104, Diagnostic Code 7120.

While Diagnostic Code 7120 has not been directly addressed by the United States Court of Appeals for Veterans Claims (Veterans Court), the Board finds that the criteria for an evaluation in excess of 10 percent under Diagnostic Code 7120 are essentially successive in nature. See Tatum v. Shinseki, 23 Vet. App. 152, 156 (2008) (noting that successive rating criteria are where the evaluation for each higher disability rating includes the criteria of each lower disability rating, such that if a component is not met at any one level, the Veteran can only be rated at the level that does not require the missing component).

Thus, in order to warrant a 20 percent or higher rating, the evidence would have to substantiate that edema is persistent, and that such persistent edema is not completely relieved by elevation of the extremity. 

In correspondence received in April 2010, the Veteran complained that swelling in her right lower extremity can get severe at times and can make her right leg twice the size of her left leg. 

The report of a VA examination dated October 2012 reveals that the Veteran was found to have varicose veins and/or post-phlebitic syndrome of the right lower extremity. The Veteran was found not to meet the diagnostic criteria for peripheral vascular disease, Reynaud's syndrome, or other vascular disorder. The symptoms found to be associated with this diagnosis included aching and fatigue in the leg after prolonged standing or walking. Such symptoms were found to be relieved by elevation of the extremity. Symptoms found not to be present or associated with the disability included persistent edema, stasis pigmentation, eczema, ulceration, subcutaneous induration, massive board-like edema, and constant pain at rest. The Veteran required no assistive devices. The examiner described visible and palpable varicose veins in right mid shin area inferomedial to the knee joint popliteal fossa lateral shin area, and one vein in the popliteal fossa right mid-calf with circumference of 38 centimeters. While the examiner found no pitting edema, he noted that her right leg appeared larger than the left. The examiner found no impact on the Veteran's ability to work, noting that she delivers mail for the post office in a truck and is still managing her job. 

In addition to the examination results, a July 2010 VA knee examiner described intermittent swelling around the knee. 

A September 2013 Vascular Surgery Consultation was described as normal. A scan of the deep venous system from the ankle to the groin region showed no suggestion of thrombus- acute or chronic. Veins were not dilated and compressed easily with probe pressure. No intraluminal echogenic material was identified. Color and Doppler signals are spontaneous and phasic with respirations. The right greater saphenous vein showed minimal amounts of valvular reflux while standing multiple superficial varicosities were found in lateral posterior knee and lateral mid tibial regions. The assessment was "minimal varicosities behind the knee and on the lower leg." Surgical intervention was not recommended. See VBMS Record 12/02/2013, P. 17. 

After a review of all of the evidence, the Board finds that the criteria for a disability rating in excess of 10 percent for right varicose veins are not met. Moreover, in light of this finding, and as the criteria are successive, it cannot be said that the criteria for any higher rating are more nearly approximated than the criteria for a 10 percent rating. 

The Board acknowledges the Veteran's assertions that her leg is painful and that it swells. The VA examiner acknowledged that the Veteran's right leg appeared larger than the left leg, yet still found that there was not persistent edema as required for a 20 percent rating. With respect to pain, the criteria for a 10 percent rating fully contemplate aching and fatigue of the extremity after prolonged standing or walking. This is consistent with the Veteran's description. 

In sum, as the criteria for a 20 percent or higher rating are not met, the Board concludes that an increased rating is not warranted for the service connected right lower extremity vascular disability. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.

Right Knee Skin Disability 

The current appeal arises from a service connection claim for right knee surgical scars received at the RO on March 23, 2010. In an August 2010 rating decision, the RO granted service connection for right knee surgical scars and assigned an initial rating of 0 percent under Diagnostic Code 7805, effective March 23, 2010. 

Diagnostic Code 7805 essentially governs disabling effects of scars not addressed by other more specific diagnostic codes. As the RO determined that there were no disabling effects, a 0 percent rating was assigned. 

Diagnostic Code 7800 requires involvement of the head, face, or neck, which is not alleged here. 

Diagnostic Code 7801 applies to scars that are deep and nonlinear. In order to warrant a rating in excess of 10 percent, the scar must cover at least 6 square inches (39 square centimeters). Here, there is no evidence or assertion of such symptoms. The Veteran's scars are surgical scars and the descriptions are consistent with linear scars. An October 2012 VA vascular examination revealed a finding that there were no scars with total area of 39 square cm (6 square inches) or greater. 

Diagnostic Code 7802 provides a 10 percent rating for superficial nonlinear scars that cover areas of 144 square inches (929 square centimeters) or greater. Here, there is no evidence or assertion of such symptoms. 

Diagnostic Code 7804 provides a rating of 10 percent for up to two tender or painful scars. A July 2010 VA knee examination reveals two surgical incisions on the anterior medial portion of the knee which were well healed without signs of infection. An October 2012 VA vascular examination revealed a finding that there were no painful or unstable scars. 

While the examination findings have been negative with respect to whether the surgical scars are painful, the Veteran asserts that they are painful. The Veteran's description of her symptoms is competent evidence. She stated that she has severe pain in the surgical scars (VBMS record 10/13/2010). With resolution of all reasonable doubt in favor of the claim, the Board concludes that a 10 percent rating is warranted for two tender scars under Diagnostic Code 7804. 

However, as there is no contention that there are more than two scars, the Board finds that a rating in excess of 10 percent is not warranted. Moreover, as the evidence demonstrates to additional functional impairment arising from the scars, the Board finds that no separate compensable rating is warranted under any other scar code. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against any benefit not granted, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.

Right Knee Restoration

In a July 1980 rating decision, the RO granted service connection for a right knee disability and assigned an initial disability rating of 10 percent under Diagnostic Code 5257, effective June 25, 1980. The nature of the original knee injury was a torn medical meniscus for which she underwent an open-partial meniscectomy post service in 1982. 

The current appeal arises from a claim of entitlement to an increased disability rating received at the RO on March 17, 2010. In an August 2010 rating decision, the RO changed the diagnostic code to rate the right knee disability from 5257 (lateral instability or recurrent subluxation) to 5010 (traumatic arthritis) and evaluated the disability on the basis of limited motion under Diagnostic Code 5260. 

While changing a diagnostic code used to rate a specific disability does not constitute the severing of service connection, Read v. Shinseki, 651 F.3d 1296 (Fed. Cir. 2011), in some cases, such as with the knees, it is permissible to compensate co-existing disabilities of the same joint by use of separate diagnostic codes. It has long been understood that VA law permits separate disability ratings for arthritis and instability of the same knee. See VAOPGCPREC 23-97. The Veterans Court recently held that the changing of Diagnostic Codes based on current evidence of knee arthritis (5010) but no current evidence of the previously rated knee laxity (5257), after that rating had been in effect for over 20 years (and thus protected pursuant to 38 C.F.R. § 3.951) constituted a reduction that warranted reversal. See Murray v. Shinseki, 24 Vet. App. 420 (2011). In pertinent part, 38 C.F.R. § 3.951 states that "[a] disability which has been continuously rated at or above any evaluation of disability for 20 or more years for compensation purposes... will not be reduced to less than such evaluation except upon a showing that such rating was based on fraud").

In essence, the holding in Murray establishes that ratings under Diagnostic Codes 5003-5010 and 5257 represent distinct knee disabilities. Consistent with established precedent regarding ratings for knee disabilities, ratings for laxity, or more specifically, lateral instability, do not contemplate loss of range of motion, and ratings for loss of range of motion do not contemplate lateral instability. Thus, the RO's action in August 2010 was to terminate the rating for lateral instability, which had been in effect for more than 20 years, and to establish a new disability (arthritis) which was assigned a rating on the basis of limitation of motion. Therefore, consistent with the holding in Murray, the Board finds that the separate 10 percent rating for lateral instability must be reestablished. The increased rating claim will be addressed in the Remand section below.

Extraschedular Consideration

The Board has considered whether an extraschedular evaluation is warranted for the issues on appeal. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2016). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, there must be a comparison between the severity and symptomatology of the service-connected disability with the criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

The Board finds that the first Thun element is not satisfied here. The Veteran's service-connected right knee scar is manifested by two painful, tender scars. Her service connected varicose veins are manifested by signs and symptoms such as pain and swelling which impair her ability to stand and walk for long periods. These signs and symptoms, and their resulting impairment, are contemplated by the rating schedule. In short, there is nothing exceptional or unusual about the Veteran's disability because the rating criteria reasonably describe her disability level and symptomatology. Thun, 22 Vet. App. at 115.

In this regard and consistent with the reasoning presented above, the Board finds that the rating schedule is adequate, even in regard to the collective and combined effect of all of the Veteran's service connected disabilities, and that referral for extraschedular consideration is not warranted under the circumstances of this case. Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. Aug. 6, 2014). In so finding, the Board notes that the Veteran has not identified or asserted that the collective and combined effect of all of the Veteran's service connected disabilities have rendered the rating schedules for the vascular system and skin inadequate. See Yancy v. McDonald, 27 Vet. App. 484, 495 (2016) (the Board is required to address whether referral for extraschedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities).

Special Monthly Compensation Consideration

The Board has considered whether the Veteran's disability picture warrants any level of Special Monthly Compensation (SMC). See 38 U.S.C.A. §§ 1114; 38 C.F.R. §§ 3.350, 3.352. The Veteran is currently not in receipt of any level of SMC. The evidence demonstrates that she does not have such impairment as approximates loss of use of either upper extremity. 38 U.S.C. § 1114(k), (m), (n), (o); 38 CFR § 3.350(a), (c), (d), (e). She has also not been found to be housebound or in need of the aid and attendance of another. 38 U.S.C. § 1114(l), (s), (r) 38 CFR § 3.350(b), (i), (h). Her combined disability rating is 20 percent since March 23, 2010, 30 percent since October 13, 2010, and 40 percent since March 23, 2012. 38 U.S.C. § 1114(p), (s) 38 CFR § 3.350(f), (i). Under the circumstances here, the Board concludes that no additional SMC is warranted. 

Duties to Notify and Assist

VA's duty to notify was satisfied by letters in March 2010, April 2010, May 2011, July 2011, and October 2011. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). The RO has obtained pertinent medical records including the service treatment records, VA outpatient treatment reports, and private treatment reports identified by the Veteran. The Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of these claims that has not been obtained. The RO has also obtained a thorough medical examination regarding these claims, as well as medical opinions where necessary. The Veteran has made no specific allegations as to the inadequacy of any opinion. Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of his opinion). 


ORDER

Reopening of service connection for a GI disorder is granted. 

Service connection for neurological impairment of the lower extremities is denied. 

A rating in excess of 10 percent for the right lower extremity vascular disability is denied. 

A rating of 10 percent, but not higher, for the right knee skin disability, is granted. 

Restoration of a separate rating of 10 percent for right knee lateral instability is granted. 

REMAND

The Board has reopened the claim of entitlement to service connection for a GI disorder having found new and material evidence. Because the evidence establishes an episode diagnosed as irritable bowel in service and a current diagnosis suggestive of irritable bowel syndrome, the Board finds that a medical opinion is necessary to determine whether the irritable bowel in service is etiologically related to the current diagnosis. McClendon v. Nicholson, 20 Vet App. 79, 81 (2006).

With respect to the right knee disability, in Correia v. McDonald, 28 Vet. App. 158 (2016), the Court of Appeals for Veterans Claims held that to be adequate a VA joints examination must include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing, and, if possible, with range of motion measurements of the opposite undamaged joint. The report of VA examination in July 2010, which is the only VA examination of record with respect to the right knee, does not reflect that the specified testing was conducted. Accordingly, under Correia, it is not adequate for rating purposes.

Accordingly, the claims are REMANDED for the following action:

1. Request that the Veteran identify any outstanding VA or private medical records. Take appropriate efforts to obtain any records identified. 

2. Schedule an appropriate VA examination to determine the manifestations and severity of the Veteran's right knee disability. All appropriate testing should be conducted in accordance with Correia v. McDonald and 38 C.F.R. § 4.59.

3. Schedule an appropriate VA examination to determine the nature and etiology of the Veteran's GI disorder. The relevant documents in the claims file should be made available to the VA examiner.

The VA examiner is requested to offer an opinion as to whether it is at least as likely as not (i.e., to at least a 50-50 degree of probability) that current irritable bowel syndrome or any other GI disorder is causally or etiologically related to the Veteran's active service to include the episode of irritable bowel treated therein. 

Note: The term "at least as likely as not" does not mean merely within the realm of medical possibility, but that the medical evidence for and against a conclusion is so evenly divided that it is as medically sound to find in favor of causation as it is to find against it.

All opinions are to be accompanied by a rationale consistent with the evidence of record. A discussion of the pertinent evidence, relevant medical treatises, and generally accepted medical principles is requested. If the examiner cannot provide an opinion without resorting to speculation, he or she shall provide complete explanations stating why this is so. In so doing, the examiner shall explain whether any inability to provide a more definitive opinion is the result of a need for additional information, or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question.

4. Readjudicate the remanded claims. If either benefit sought on appeal is not granted, the Veteran and her representative should be provided a supplemental statement of the case and an appropriate time period for response. The case should then be returned to the Board for further consideration, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 

This issue must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
JONATHAN B. KRAMER 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs